820 P.2d 1128 (1991)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of N.F., A.R., J.E.R., and J.W.R., children,
and Concerning J.R., Respondent-Appellant.
No. 90CA156.
Colorado Court of Appeals, Div. I.
May 9, 1991.
Rehearing Denied June 20, 1991.
Certiorari Denied November 25, 1991.
*1129 Carolyn Lobato-Bleidt, Asst. County Atty., Durango, for petitioner-appellee.
Michael Wanger, Durango, for respondent-appellant.
Opinion by Judge CRISWELL.
Respondent (father) appeals from the judgment of the district court terminating his parental relationship with his natural children, N.F., A.R., J.E.R., and J.W.R. We affirm.
*1130 In a previous appeal involving these termination proceedings, People in Interest of N.F., (Colo.App. No. 86CA0588, December 31, 1987) (not selected for publication), we reversed the trial court's previous decree of termination on the grounds that there was no evidence that the father had not complied with the court-ordered treatment plan, as found by the trial court. We remanded the cause to the trial court with directions either to implement the existing treatment plan or to cause another appropriate treatment plan to be adopted, "and for such other proceedings, consistent with the views contained herein, as the court may deem to be warranted."
On remand, the trial court adopted a new treatment plan, and the La Plata County Department of Social Services (DSS) later filed an amended motion to terminate the father's parental relationship. After an extensive evidentiary hearing, the trial court entered its termination order, finding that no further treatment plan could be devised that would be likely to address father's unfitness as a parent because his mental condition was of such duration and nature as to render him unlikely within a reasonable time to be able to care for his children. In addition, it found that the father had abandoned the children.

I.
The father first argues that the trial court erred by failing to comply with this court's directive to implement the previous, or to devise a new, appropriate treatment plan. We disagree.
In our previous opinion, we noted that the father had expressed a willingness to comply with the previous treatment plan, but had been unable to comply because the DSS selected psychologist, concluding that further counseling sessions with him would not be therapeutic, had discontinued treatment. Thus, the DSS had made it impossible for the father to comply with the plan's provisions. Under these circumstances, we remanded to the trial court with directions to implement the existing treatment plan or to adopt a new one.
On remand, the DSS submitted a new treatment plan, which called for the father to undergo a psychological evaluation by a professional selected by DSS, who was adept at working with offenders and who specialized in issues of sexual abuse. Based upon this psychological evaluation, it was contemplated that yet a further treatment plan would then be adopted. This treatment plan was approved by the district court.
However, because the father left his home without notice to the court, the DSS, or his counsel, this treatment plan was not implemented as anticipated. Nevertheless, after the father was located, he completed a psychological evaluation by a professional selected by the DSS. After this evaluation and after an evidentiary hearing, the court concluded that no further treatment plan could be devised to teach the father to be able to care for the physical and emotional needs of the children. Accordingly, the court ordered the termination of the father's parental rights.
Under the circumstances, we hold that the trial court did all that was within its power to comply with our previous mandate. A treatment plan providing for a psychological evaluation was approved as required, the psychological evaluation was performed, and a hearing was held at which three psychologists testified as to the father's mental condition. After weighing all the evidence, the court concluded, pursuant to § 19-3-604(1)(b), C.R.S. (1990 Cum.Supp.), that no further treatment plan could be devised. Therefore, the court was authorized to conduct "other proceedings," including a ruling on a motion for termination, as our mandate provided.

II.
The father also argues that the trial court erred by applying Colo.Sess. Laws 1987, ch. 138, § 19-3-604(1)(b) at 788, to terminate his parental rights because the original termination proceedings here were begun prior to the effective date of that amended statute. We disagree.
Prior to the 1987 repeal and reenactment of the Children's Code, § 19-11-105(1)(b), *1131 C.R.S. (1986 Repl.Vol. 8B) provided that the court could order a termination based upon a finding that:
"the child is adjudicated dependent or neglected and all of the following exist:
(I) That an appropriate treatment plan approved by the court has not been reasonably complied with ... or has not been successful or that the court has previously found ... [that because the child has been abandoned and the parents cannot be located] an appropriate treatment plan could not be devised;
(II) That the parent is unfit;
(III) That the conduct or condition of the parent ... is unlikely to change within a reasonable time."
In 1987, the General Assembly broadened the grounds for termination by enacting the provision in question here, now codified as § 19-3-604, C.R.S. (1990 Cum. Supp.), which provides that the court may order a termination of the parent-child relationship upon a finding of any of the following:
"(b) That the child is adjudicated dependent or neglected and the court has found by clear and convincing evidence that no appropriate treatment plan can be devised to address the unfitness of the parent.... [because of]:
(I) Emotional illness, mental illness, or mental deficiency of such duration or nature as to render the parent unlikely within a reasonable time to care for the ongoing physical, mental, and emotional needs of the child...."
The father argues that, because the original petition in dependency and neglect was filed before this 1987 statutory amendment, that statute could not be used in determining the DSS motion for termination. He claims that such use would constitute a retroactive application of law in violation of the ex post facto provision of the state constitution, Colo. Const. Art. II, § 11. We disagree.
Generally, changes in statutes are presumed to be prospective in nature, and retrospective legislation is prohibited. People in Interest of R.F.A., 744 P.2d 1202 (Colo.App.1987). However, a statute is not rendered retroactive simply because the facts upon which it operates occurred before its effective date. Howard v. Colorado Department of Revenue, 680 P.2d 1336 (Colo.App.1984); Dailey, Goodwin & O'Leary, P.C. v. Division of Employment, 40 Colo.App. 256, 572 P.2d 853 (1977).
Instead, the constitutional prohibition against retrospective laws applies to acts which take away or impair vested rights acquired under existing law, create new obligations, impose new duties, or attach new disabilities in respect to transactions or considerations already past. Qualls, Inc. v. Berryman, 789 P.2d 1095 (Colo. 1990). Further, while changes in substantive law are required to operate prospectively, new procedures may be applicable to existing causes of actions, unless a contrary intent is expressed in the statute. Davis v. State Board of Psychologist Examiners, 791 P.2d 1198 (Colo.App.1989).
We agree that the amended statute changes the substantive grounds upon which parental rights may be terminated and does not merely change the procedure that the court employs in termination proceedings. Hence, that amendment constituted a substantive, not a procedural, change.
However, the application of that amended statute here was not retroactive in the prohibited sense. Applying new statutory criteria to a circumstance occurring prior to the enactment of the amendment is not considered to be a retroactive application, provided the act that causes such application occurs after the effective date of the amended statute. Nix v. Tice, 44 Colo.App. 42, 607 P.2d 399 (1980). And, a trial court may properly consider information obtained in previous hearings to determine petitions to terminate the parental-child relationship. People in Interest of J.R., 711 P.2d 701 (Colo.App.1985).
Here, the petition to determine that the children were dependent and neglected was filed, a determination of that status was made, and the original order of termination was entered, before the pertinent statutory amendment was adopted. Our reversal of *1132 that termination decree was entered after the effective date of the amendment, however, as was the trial court's orders on remand, which adopted a new treatment plan and which ultimately terminated the father's rights.
Moreover, nothing that occurred prior to the court's most recent termination decree mandated a termination of the father's rights. While a declaration that a child is dependent and neglected is a necessary condition precedent to a later termination of a parent's rights, such a judicial declaration of such status does not mandate a later termination decree. The court in considering a motion to terminate parental rights must take into account the facts disclosed in the prior proceedings. Nevertheless, it is the facts as they exist on the date of the termination decree, including the parent's present unfitness, which are controlling.
Here, the evidence presented during the termination hearing related to the father's present condition as it existed after the date of the amendment, and it was based upon interviews with, and examinations of, the father, all of which occurred after the adoption of the statutory amendment. Accordingly, we conclude that the fact that the original petition was filed and the children determined to be dependent and neglected before that amendment was adopted did not prevent the court from applying the new statute to the later termination proceedings. See Nix v. Tice, supra.

III.
The father also argues that the record fails to support the trial court's findings that no appropriate treatment plan could be devised. Again, we disagree.
The evidence in this case was undisputed that the father, who is now in his 70's, has an antisocial personality disorder. The unanimous professional evidence is that he is presently unfit to be a parent and that there is virtually no likelihood that this condition will change.
Although one expert testified that, by use of vocational rehabilitation, psychotherapy, and other structured programs, the father's behavior might be changed somewhat, he also conceded that there was "little chance" that he could ever become a fit parent.
In light of this evidence, the trial court's finding that no appropriate treatment plan could be devised is supported by clear and convincing evidence, as required by § 19-3-604, C.R.S. (1990 Cum.Supp.).

IV.
Finally, the father contends that he was denied his right to procedural due process because the DSS excused one of the psychologists, who had testified as an expert witness, without the explicit permission of the court. We conclude that this record does not support any claim of prejudicial error.
After the witness finished testifying, the court asked the People's attorney if the witness could be excused. Counsel replied that she might "ask him to stick around in case I need him on rebuttal," and the court instructed the witness to remain in the courtroom. At that time, the father's counsel gave no indication that he intended to recall this witness.
Later that day, when the court asked the father's attorney if he had any further witnesses to call, he asked that the People's witness be recalled. Counsel for the People then stated that, after deciding that the People had no further need for this witness' testimony, she allowed him to take an earlier flight back to Texas. Counsel also noted that, when the court initially asked to excuse the witness, the father interposed no objection and gave no indication that he was planning to recall him. After this explanation, counsel for the father made no further objection.
A defendant cannot establish a violation of his constitutional right to compulsory process, unless he can make a "plausible showing how the testimony would have been both material and favorable to the defense." This materiality standard is also applied in analyzing due process challenges based on the absence of a witness. *1133 People v. Chastain, 733 P.2d 1206 (Colo. 1987).
Further, if counsel makes no offer of proof as to what a witness' testimony may be, and this court is unable to determine from another source the manner in which the exclusion of the evidence was prejudicial, the error, if any, in refusing the evidence cannot be considered to have been prejudicial. See People v. Hise, 738 P.2d 13 (Colo.App.1986).
Here, counsel originally gave no indication that the witness should not be excused, made no objection when it became apparent that he was not available, and made no offer of proof as to the witness' expected testimony upon recall. Under these circumstances, the father has failed to demonstrate how allowing this witness to leave prejudiced him, and the later absence of this witness must be considered to have been harmless.
The judgment of the trial court is affirmed.
PIERCE and DUBOFSKY, JJ., concur.