The PEOPLE of the State of Colorado, In the Interest of E.I.C. and K.N.C., Children,

Upon the Petition of the Denver County Department of Social Services, Petitioner–Appellee,

and

Concerning K.W.F., Respondent–Appellant.

No. 96CA1707.

Colorado Court of Appeals, Div. II.

Jan. 8, 1998.

Rehearing Denied Feb. 19, 1998.

Certiorari Denied June 29, 1998.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Sec. 5(3), and

§ 24–51–1105, C.R.S.1997.

Daniel E. Muse, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, for Petitioner–Appellee.

Law Office of Bernard W. Messer, Bernard W. Messer, Kristy Messer, Denver, for Respondent–Appellant.

Opinion by Judge CRISWELL.

K.W.F. (father) appeals the judgment of the juvenile court that terminated his parent-child legal relationship with his two children, E.I.C. and K.N.C. We affirm.

The two children were adjudicated dependent and neglected in August 1996, at which time they were 9 and 8 years old, respectively. Father had previously been convicted of several crimes, including first degree murder, and he was then serving two consecutive life sentences, plus 144 years. Hence, at the time of the termination of his parental rights, the probabilities were substantial that he would never be available to assume a normal life with the two children.

## I.

Father contends that the statutes pursuant to which his parental rights were terminated are unconstitutional for several reasons. We reject all of his arguments with respect to this subject.

Section 19–3–604(1)(b), C.R.S.1997, provides that a court may terminate the parent-child legal relationship if it determines that the child has been adjudicated dependent or neglected and that no treatment plan can be devised "to address the unfitness of the parent." In making this determination, the court must find that one or more of several conditions exist.

One of these conditions is that the parent is subject to "long-term confinement ... of such duration that the parent is not eligible for parole for at least six years from the date the child was adjudicated dependent or neglected...." In such a case, "the court must find by clear and convincing evidence that no appropriate treatment plan can be devised to address the unfitness of the parent...." Section 19–3–604(1)(b)(III), C.R.S.1997.

Father here obviously fell within this category, and the trial court relied upon § 19–3–604(1)(b)(III) in determining that he was unfit within the meaning of the statute. It also determined that no appropriate treatment plan could be devised for him.

## A.

Father first asserts that, because the exercise of parental rights involve fundamental rights, § 19–3–604(1)(b)(III) denies his Fourteenth Amendment right to substantive due process of law. We disagree.

Substantive due process of law requires that any regulation limiting or restricting fundamental rights be subjected to strict scrutiny, so as to assure that the regulation is justified by some compelling state interest. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *see Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); 2 R. Rotunda & J. Nowak, *Treatise on Constitutional Law* § 14.6 (3rd ed.1992).

We agree that the interest of parents in the care, custody, and management of their children implicates a fundamental liberty interest. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). We will assume, therefore, that the statute in question must be subjected to a strict scrutiny. We conclude, nevertheless, that, because it serves a compelling state interest, it does not offend against any requirement of substantive due process of law.

The state has a compelling interest in assuring that children in Colorado are neither neglected nor dependent and, more affirmatively, that they are provided with a stable home atmosphere in which they may progress physically, intellectually, and emotionally. Hence, if a parent, because of a mental or emotional condition, cannot be expected to provide such a home for a child within a reasonable period, the state's compelling interest in the welfare of that child justifies the

termination of that parent's rights. *See* § 19–3–604(1)(b)(I), C.R.S.1997.

We see no significant difference between a parent whose mental or emotional condition renders that parent incapable of nurturing his or her child and a parent whose extended physical absence prevents him or her from providing the care, comfort, and guidance that the child needs. In either case, to protect the child, the state must provide a substituted parental responsibility.

Further, the statute makes clear that long-term confinement of six years or more from the date of the child's adjudication as dependent or neglected will not automatically result in a termination order. Not only does § 19–3–604(1)(b) itself require that the court determine, by clear and convincing evidence, that no appropriate treatment plan can be devised under the circumstances, but § 19–3–604(3), C.R.S.1997, enjoins the court, in all cases, to "give primary consideration to the physical, mental, and emotional conditions of the child."

Hence, in an appropriate case, a court could conclude that, even though a parent may be confined for six years or more, the age of the child, the existence of capable members of an extended family, or other factors may allow the formulation of an appropriate treatment plan and that considerations of the child's welfare would not support a termination order. However, the court made no such determination here.

We conclude, therefore, that the court's reliance upon § 19–3–604(1)(b)(III) in entering the order terminating father's parental rights did not deny father's substantive due process rights.

### B.

■ Section 19–3–604(1)(b)(III) also provides that, in certain specified counties, a parent's confinement without possibility of parole for *36 months* or more from the date of the child's adjudication may be deemed to render the parent unfit. In consideration of this distinction, father argues that the statute violates the constitutional guarantee of equal protection. We conclude, however, that father has no standing to raise this issue.

Of the two classes created by the statute, *i.e.*, those who will be confined for more than six years and those who will be confined for less than six years, but more than 36 months, father falls within the general class, not the class created by the exception. The statute does not allow for a finding of unfitness in those instances in which the parent is to be confined for less than six years, except in specified counties, and father does not assert that one of these counties is involved in this case. Indeed, because father will be confined for more than six years, he is to be considered unfit without reference to the statutory distinction.

Hence, because father does not fall within the class that is treated less favorably, he lacks standing to raise any equal protection issue. *See People v. Aragon*, 653 P.2d 715, 719 (Colo.1982)(defendant had no standing "to question the constitutionality of a statute which was never applied against him"); *Thompson v. Ricketts*, 500 F.Supp. 688 (D.Colo.1980) (defendant who does not assert that he acted under heat of passion cannot assert that heat of passion statute violates equal protection).

### C.

■ Finally, because father's assertion that § 19–3–604(1)(b)(III) violates his Eighth Amendment right to be free from cruel and unusual punishment was raised only in his reply brief filed with this court, we decline to address it. *See People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

### II.

■ Father also contends that there is insufficient evidence to support the termination. We do not agree.

There exists clear and convincing evidence that no appropriate treatment plan could be devised to address the father's unfitness that resulted from his incarceration. *See People in Interest of T.T.*, 845 P.2d 539 (Colo.App. 1992). *See also People in Interest of T.W.*, 797 P.2d 821 (Colo.App.1990)(no treatment plan necessary to address father's unfitness under § 19–3–604(1)(b)(IV), C.R.S.1997).

Here, father does not contest the trial court's conclusion with respect to the inappropriateness of any treatment plan. He challenges only the trial court's finding that he would not be eligible for parole for at least six years after the date of the dependency or neglect adjudication. Specifically, he argues that there was no evidence respecting his parole status.

However, in concluding that father would be ineligible for parole for at least six years after the date of the dependency or neglect adjudication, the trial court properly took judicial notice of both the length of his sentences (two consecutive life sentences plus 144 years), as well as the date the crimes were committed, *i.e.*, as to crime committed on June 6, 1989, father not eligible for parole for at least 40 years pursuant to § 18–1–105(4), C.R.S.1997. *See People in Interest of T.T., supra.*

### III.

 Father finally argues that, before parental rights can be terminated, there must be a showing that the court considered less drastic alternatives and specifically eliminated those alternatives. He suggests that the testimony presented to the trial court showed that there was a reasonable alternative to termination, namely, the children being raised in their current foster home. Again, we do not agree.

The trial court must consider and eliminate less drastic alternatives before parental rights can be terminated. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986). However, the record here reflects that less drastic alternatives were considered and eliminated prior to the decision to terminate father's parental relationship. Numerous unsuccessful attempts were made to place the children with members of father's family and with their mother's family, all to no avail.

And, allowing the children to remain in the limbo status of continual residence with a foster family without providing an opportunity for their attainment of some permanent legal relationship is not a viable alternative.

Therefore, the record supports the conclusion that the trial court's termination of father's parental rights was a decision of last resort.

The judgment is affirmed.

DAVIDSON and ROTHENBERG, JJ., concur.