91 P.3d 453 (2004)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of D.R.W., a Child, and
Concerning J.R.J., Respondent-Appellant.
No. 03CA0559.
Colorado Court of Appeals, Div. I.
March 11, 2004.
Rehearing Denied April 8, 2004.
*454 Furman, Kerns, & Bauer, LLC, Steven M. Furman, Clayton B. Farrell, Fort Morgan, Colorado, for Petitioner-Appellee.
Law Office of Douglas J. Marston, Douglas J. Marston, Fort Morgan, Colorado, for Respondent-Appellant.
Opinion by Judge WEBB.
J.R.J. (father) appeals from a judgment terminating the parent-child relationship between him and his child, D.R.W. (child). Because the trial court terminated father's parental rights without having conducted a dispositional hearing after the child was adjudicated dependent and neglected as to father, we reverse and remand.
The child's guardian contacted the Washington County Department of Social Services (Department) in the fall of 2000 when she could not control the child, who was then three years old. On November 13, 2000, the Department filed a petition in dependency and neglect and began to assess the child's particular mental health needs.
According to the petition, termination of the parent-child legal relationship was "a possible remedy." Attached to the petition was a "NOTICE  LEGAL RIGHTS AND PRIVILEGES," which included the statement: "If the child is adjudicated dependent or neglected, the court shall enter dispositional orders.... [F]urthermore, the court shall order an appropriate treatment plan involving the child and each respondent ... or find that no appropriate treatment plan can be devised for a particular respondent."
The Department prepared and filed a treatment plan on November 20, 2000. As to *455 father, who was then incarcerated on bad check charges, the plan required only that he aid the Department in providing the child with appropriate treatment, that he provide the Department with information and documents in aid of treatment, that he sign releases for necessary information, and that he keep the Department advised of his incarceration status. The Department never proposed any changes to this treatment plan, nor did father ever request any changes.
The child was placed at a residential treatment center on March 1, 2001. As of March 14, 2001, the single permanency goal in the Department's family services plan was permanent kinship placement. During the child's year-long stay at the treatment center, his maternal grandmother participated in his treatment and became his primary attachment figure.
On April 4, 2001, father, who remained incarcerated, signed a stipulation to continue the adjudication, which the court accepted by a written order that approved both the treatment plan and the recommendations in the Department's family services plan. The stipulation provided that the court would review the matter in six months and that, if father successfully complied with the conditions of the continued adjudication, which included the treatment plan, or there was no need for continued court involvement, "the matter shall be dismissed."
On July 25, 2001, the court adopted the Department's revised family services plan, which reflected the same primary permanency goal of guardianship or permanent custody and a new concurrent goal of permanent placement with relatives through adoption. Father took no action in response to this change in the family services plan.
On September 17, 2001, the court reviewed the matter and, after a hearing, entered an adjudication of dependency and neglect over father's objection. The parties agreed that father had complied with the minimal conditions of the continued adjudication. Nevertheless, based on the child's serious ongoing behavioral problems, the court entered an adjudication order because continuing court involvement was required. The court did not hold a dispositional hearing, either in connection with the adjudication hearing or at any time thereafter.
In February 2002, the child was discharged from the residential treatment center and placed with his maternal grandmother. Father then informed the Department that although he agreed with the placement and did not intend to seek custody, he was unwilling to relinquish his parental rights because he hoped to exercise visitation with the child. The Department referred father for a psychological evaluation to determine whether he could learn the needed parenting skills, in light of the child's unusual needs. The Department told father that following the evaluation it would either work with him to devise and implement a treatment plan consistent with his continued incarceration or seek termination of his parental rights.
On April 19, 2002, after father's evaluation identified serious psychological problems, the Department moved to terminate his parental rights under § 19-3-604(1)(b)(I), C.R.S.2003. The Department asserted that no appropriate treatment plan could be devised to address father's unfitness in a reasonable time, based on his mental condition and in light of the ongoing physical, mental, and emotional needs of the child. The Department never asserted that father posed a threat to the child's health or safety.
Father opposed termination, arguing that at the time he entered into the stipulation to continued adjudication in April 2001, the Department's only permanency goal was permanent placement with relatives through guardianship or permanent custody. According to father, because he did not object to the relative placement he then had no reason to demand, and the Department never thereafter offered, a treatment plan reasonably calculated to reunite him with his child.
Father was released from DOC to a halfway house in late 2002. The Department forbade visitation. Father filed a motion for visitation, which the Department opposed. At the January 30, 2003, termination hearing, father testified that he would be released from the halfway house on March 8, 2003.
In its decree of termination, the court rejected father's assertion that he had been *456 misled, finding that the Department had made reasonable efforts at reunification and that "termination was at least on the table as a potential option when the permanency planning was conducted on June 25, of 2001."
The court further found that father was a virtual stranger to the child because of his incarceration since the child's birth; that father's treatment plan was appropriate because he had been incarcerated until shortly before the hearing and therefore "did not have the ability to engage in any treatment or therapy"; that the child has profound needs beyond the ability of most parents; that because of father's psychological illness, no treatment plan could be devised which would establish the necessary parenting skills within a reasonable time; and that given the child's attachment to the maternal grandmother, his best interests required termination of father's parental rights. The court explained that merely awarding permanent custody to the maternal grandmother, and not terminating father's parental rights, would create future problems for both her and the child.

I.
Father challenges the termination of his parental rights on the basis that the trial court did not hold a dispositional hearing after adjudication, at which an appropriate treatment plan should have been considered and adopted, unless the court then determined that no appropriate plan could be devised. On this record, we agree that the trial court did not substantially comply with the procedural requirements of the Parent-Child Legal Relationship Termination Act of 1987, § 19-3-601, et seq., C.R.S.2003. We therefore reverse the judgment terminating father's parental rights and remand for further proceedings.
Under the Children's Code, § 19-1-101, et seq., C.R.S.2003, dependency and neglect proceedings are bifurcated: "In the first phase, the court determines if there are grounds to adjudicate the child dependent and neglected. If the court sustains the petition, the second, or dispositional, phase commences with the hearing and adoption of a treatment plan." E.O. v. People in Interest of C.O.A., 854 P.2d 797, 800 (Colo.1993)(footnote omitted). Section 19-3-507(1)(a), C.R.S. 2003, provides that "[a]fter making an order of adjudication, the court shall hear evidence on the question of the proper disposition best serving the interests of the child and the public" (emphasis added).
The Children's Code treats the initial hearing following an adjudication of dependency and neglect as a "dispositional hearing." People in Interest of C.L.S., 934 P.2d 851, 853-54 (Colo.App.1996)("The statutory scheme is thus clear in treating an initial dispositional order adopting a treatment plan as a `decree of disposition'" for the purpose of finality.) The resulting "decree of disposition" may postpone a decision about termination of parental rights and instead order placement of the child. See § 19-3-508(1)(a)-(c), C.R.S.2003. However "[r]egardless of placement, the court `shall' approve an appropriate treatment plan," People in Interest of C.L.S., supra, 934 P.2d at 854, unless it finds that no appropriate treatment plan could be devised. Section 19-3-508(1)(e)(I), C.R.S.2003.
Section 19-3-508(1), C.R.S.2003, provides that the court may enter a decree of disposition the same day as the adjudication, but in any event the court "shall" do so within forty-five days, or thirty days in expedited circumstances, unless the court finds that the best interests of the child will be served by granting a delay. "It is the intent of the general assembly that the dispositional hearing be held on the same day as the adjudicatory hearing, whenever possible." Section 19-3-508(1). However, these time periods are not jurisdictional. People in Interest of A.M., 786 P.2d 476 (Colo.App.1989).
The statute further provides that when the "proposed disposition" is termination of the parent-child legal relationship, the hearing on termination cannot be held on the same date as the adjudication, and "the court may continue the dispositional hearing to the earliest available date for a hearing." Section 19-3-508(1). Thus, even if the proposed disposition is termination, the court must still conduct a dispositional hearing. *457 The statute does not impose on any party the burden of requesting a dispositional hearing.
Moreover, "[w]hen the decree does not terminate the parent-child legal relationship, the court shall approve an appropriate treatment plan." Section 19-3-508(1) (emphasis added); see also § 19-3-508(1)(e)(I) ("[e]xcept where the proposed disposition is termination of the parent-child legal relationship, the court shall approve an appropriate treatment plan involving the child named and each respondent named and served in the action" (emphasis added)).
Nevertheless, § 19-3-508(1)(e)(I) further provides that at the dispositional hearing the court may find an appropriate treatment plan cannot be devised as to a particular respondent because, as relevant here, of "the unfitness of the parents as set forth in 19-3-604(1)(b)," C.R.S.2003. The cross reference to § 19-3-604(1)(b) was added in 1997. Section 19-3-604(1)(b), which includes among criteria for termination a finding "that no appropriate treatment plan can be devised," permits avoiding the futility of proceeding with a treatment plan doomed to failure. People in Interest of C.S.M., 805 P.2d 1129 (Colo.App.1990).
Here, after the trial court entered the adjudication as to father, it neither held a dispositional hearing nor reconsidered the existing treatment plan. Indeed, at no time between the adjudication and the motion to terminate under § 19-3-604(1)(b) was the appropriateness of father's treatment plan presented to the trial court by the Department. The court made its only finding that an appropriate treatment plan could not be devised for father, because of his own psychological problems and the child's particular needs, at the conclusion of the termination hearing. This finding then became the basis for terminating father's parental rights under § 19-3-604(1)(b).
Section 19-3-604(1)(b) provides that parental rights cannot be terminated unless the child has previously been adjudicated dependent or neglected. However, this section does not excuse the requirement to hold a dispositional hearing set forth in § 19-3-508(1) before termination of parental rights may take place. The numerous statutory references to holding a dispositional hearing, receiving evidence, and either approving an appropriate treatment plan or determining that a plan cannot be devised use mandatory language. See In re P.A.L., 5 P.3d 390 (Colo.App.2000)("shall" in a statute connotes a mandatory meaning).
Hence, we address whether, in the circumstances presented here, termination under § 19-3-604(1)(b) must have been preceded by a dispositional hearing. We conclude that the termination must be set aside because the absence of a timely dispositional hearing prejudiced father's ability to preserve his parental rights.
We begin with recognition that an order terminating parental rights affects the fundamental liberty interest in the parent-child relationship. C.S. v. People, 83 P.3d 627 (Colo.2004). Nevertheless, the state has a compelling interest in assuring that children are provided with stable and nurturing homes. People in Interest of E.I.C., 958 P.2d 511 (Colo.App.1998). Thus, where a parent cannot be expected to provide such a home within a reasonable time, because of the parent's own mental or emotional condition, "the state's compelling interest in the welfare of that child justifies the termination of that parent's rights." People in Interest of E.I.C., supra, 958 P.2d at 513-14.
The purposes of the Children's Code include proceeding "with all possible speed to a legal determination that will serve the best interests of the child," while securing for the child proper care and guidance, "preferably in his own home," and preserving and strengthening "family ties whenever possible." Section 19-1-102(1)(a)-(c), C.R.S.2003. The legislative declaration to Part 3 of Title 19 describes "the health and safety of the child" as "the paramount concern" in making reasonable efforts to unify the family. Section 19-3-100.5, C.R.S.2003.
In following the mandate to give effect to the legislative intent, City of Colorado Springs v. Powell, 48 P.3d 561 (Colo.2002), we must seek an interpretation that achieves consistency across a comprehensive statutory scheme. United Airlines, Inc. v. Indus. *458 Claim Appeals Office, 993 P.2d 1152 (Colo. 2000). We reject policy considerations in favor of the plain language of a statute. Ackerman v. Power Equipment Co., 881 P.2d 451 (Colo.App.1994).
We avoid technical readings in recognition of the "general rule that provisions of the Children's Code should be liberally construed." R.M. v. Dist. Court, 191 Colo. 42, 44, 550 P.2d 346, 348 (1976). The supreme court most recently analyzed procedures for termination of parental rights using a substantial compliance standard. C.S. v. People, supra (citing People in Interest of A.M.D., 648 P.2d 625 (Colo.1982)).
Here, when adjudicating the child as dependent and neglected as to father, the court addressed disposition by ruling that the recommendations in the family services plan were "appropriate and [are] hereby entered by the Court" and ordering continued placement of the child with the maternal grandmother. However, because father earlier had stipulated to a continued adjudication under § 19-3-505(5)(b), C.R.S.2003, the court's approval of the treatment plan in accepting the stipulation preceded, rather than followed, entry of the adjudication order.
The trial court did not re-approve, or even hear any evidence concerning, the treatment plan in effect for father when it entered the adjudication and addressed disposition. The court did not hold a dispositional hearing. Thus, as father correctly points out, the court did not comply with the statutory requirement that a dispositional hearing occur and that at such hearing it either approve an appropriate treatment plan or conclude that no appropriate treatment plan can be devised. Section 19-3-508(1), (1)(e)(I).
In response to father's argument, the Department first asserts that a dispositional hearing occurred in connection with the stipulation to continue adjudication, because at that time the trial court adopted a treatment plan and addressed disposition of the child. We are not persuaded.
On the one hand, the statutes require that a dispositional hearing occur on or after the adjudication and, unless the disposition is termination of parental rights, that the hearing include adoption of an appropriate treatment plan. Sections 19-3-507(1)(a), 19-3-508(1), (1)(e)(I). On the other hand, the statutory procedure for continued adjudication, § 19-3-505(5)(b), does not provide for accelerating the dispositional hearing and adopting an appropriate treatment plan at the continued adjudication phase.
A dispositional hearing conducted before an adjudication could not address circumstances existing at the time of, and forming the basis for, the adjudication. Those circumstances should be the baseline for an appropriate treatment plan. See People in Interest of A.N.W., 976 P.2d 365 (Colo.App.1999)(a successful treatment plan should correct or improve the parental conduct that led to state intervention).
In People in Interest of A.K.R., 765 P.2d 1031 (Colo.App.1988), the division held that termination could be based on a treatment plan approved as a condition of continuing adjudication. However, in A.K.R., supra, unlike the circumstances here, termination was the dispositional alternative pursued from the time of continued adjudication.
We also reject the Department's assertion that a court can proceed directly from an adjudication to termination under §§ 19-3-508(1)(e)(I) and 19-3-604(1)(b), on the basis that the parent is unfit and no appropriate treatment plan can be devised, without conducting an intervening dispositional hearing. Section 19-3-505, C.R.S.2003, which deals with the adjudicatory hearing, contains no discussion of immediate termination under § 19-3-604(1)(b).
Section 19-3-508, C.R.S.2003, deals with the dispositional hearing. While § 19-3-508(1)(e)(I) contemplates termination under § 19-3-604(1)(b), because an appropriate treatment plan cannot be devised, § 19-3-508(1)(e)(I) does not excuse the court from conducting a dispositional hearing. Nor does § 19-3-604(1)(b) provide an exception to the requirement that the trial court conduct a dispositional hearing. Reading these sections in pari materia establishes only that, at the dispositional hearing, the court could find an appropriate treatment plan cannot be devised. *459 Cf. People in Interest of A.N.W., supra (recognizing that following adjudication the trial court must hold a dispositional hearing).
Furthermore, even if the Department's statutory interpretation were correct, here the court did not proceed directly from adjudication to termination under § 19-3-604(1)(b). To the contrary, more than a year and a half lapsed between adjudication as to father and the court's determination at the termination hearing that no appropriate treatment plan could be devised. In our view, that passage of time, without a dispositional hearing being held, prejudiced father because he continued to operate under a treatment plan that addressed neither the child's unusual needs nor his own psychological problems.
Although the Department only learned of father's problems several months after the adjudication, the record does not show that the child's needs increased between the adjudication and the termination hearing. The petition in dependency and neglect describes the child's severe problems, including assault on teachers and other children, as well as self-destructive behavior. Yet the Department never attempted to develop father's parenting skills to enable him to meet the child's unusual needs with a revision to the initial treatment plan, which according to the trial court "only basically required [father] to remain in communication with the Department." Cf. People in Interest of J.M., 74 P.3d 475, 477 (Colo.App.2003)("[a]mong the efforts required of the department are an assessment of the family and the development of a case plan for provision of necessary services").
An appropriate treatment plan is one reasonably calculated to render the parent fit to provide parenting adequate for the child's needs within a reasonable time. Section 19-1-103(10), C.R.S.2003. Because the Department's treatment plan imposed minimal requirements on father, it was not reasonably calculated to render him a fit parent, in light of the child's unusual needs. Cf. People in Interest of B.J.D., 626 P.2d 727 (Colo.App.1981)(termination of parental rights could not be premised on treatment plan that was inappropriate).
In the decree of termination, the court found the treatment plan to have been appropriate at the time of the stipulated continued adjudication because father "was incarcerated and therefore did not have the ability to engage in any treatment or therapy." However, treatment options were not addressed in connection with the stipulated continued adjudication, and the court received no evidence at any time thereafter concerning treatment options available to father during his incarceration. Thus, the record provides no support for this finding. Cf. People in Interest of M.C.C., 641 P.2d 306 (Colo.App. 1982)(the single circumstance of incarceration does not per se prohibit the creation and implementation of an appropriate treatment plan).
Additionally, the record does not explain why the Department, despite its awareness of the child's needs and father's lengthy criminal history, took no action to obtain a psychological evaluation of father from its filing of the petition in dependency and neglect in November 2000 until early 2002. Had a dispositional hearing been held at or shortly after the adjudication, the Department would necessarily have addressed an appropriate plan in terms of the child's needs, father's problems, and his incarceration.
We recognize that in some cases changed circumstances may render a treatment plan, previously approved at a dispositional hearing based on the criteria of § 19-1-103(10) and all relevant evidence, no longer adequate. In turn, those circumstances could support a motion to terminate under § 19-3-604(1)(b) because "no appropriate treatment plan can be devised to address the unfitness of the parent."
However, that sequence of events did not occur here. The passage of time, without a dispositional hearing, created the risk that father could not defend against the "changed circumstances" argument because the Department did not establish a baseline for an appropriate treatment plan at a dispositional hearing, against which any change in circumstances could be measured.
*460 In sum, for lack of a dispositional hearing at the time of adjudication, the parties did not explore, and the court was not properly informed as to, the parameters of an appropriate treatment plan. In our view, this consequence cannot be reconciled with the statutory mandate to hold a dispositional hearing at or shortly after adjudication and, except when the court then determines that a treatment plan cannot be devised, to approve an appropriate treatment plan.
Nevertheless, the Department further asserts that the record supports the court's findings in the decree of termination that father "has a diagnosed condition that renders him unlikely to be able to care for [the child's] needs within a reasonable time," and, therefore, that "no appropriate treatment plan can be devised in this case." These circumstances are among those recognized by the supreme court as making manifest the inappropriateness of continuing the parent-child relationship. People in Interest of A.M.D., supra.
This argument is unpersuasive because it assumes that proof at a much later termination hearing of the factors permitting termination under § 19-3-604(1)(b) excuses the failure to hold a dispositional hearing and adopt an appropriate treatment plan promptly after adjudication, as required by § 19-3-508(1). We have rejected this assumption. Further examination of the proceedings before us shows why the statutory scheme envisions a dispositional hearing promptly after adjudication to establish a treatment plan so that termination of parental rights may be avoided.
In the decree of termination, the court also found that, "at best, [father] will need one to two years of intensive therapy to get to a point where he could possibly care for [the child]." Had such therapy been included in a treatment plan adopted at or shortly after the adjudication, and had therapy been made available to father over the twenty months between the adjudication and the termination hearing, despite his incarceration, father may well have been able to at least obtain visitation with the child by the time of the termination hearing or within a reasonable time thereafter. Hence, failure to hold a dispositional hearing prejudiced father's ability to preserve his parental rights.
Furthermore, the absence of a dispositional hearing prevented father from appealing at an earlier stage in the proceedings. Father could not have appealed after the adjudication of dependency and neglect, and could only have appealed after an initial dispositional order. See People in Interest of C.L.S., supra; cf. People in Interest of J.M., supra (where dispositional order is not reduced to writing, signed, and dated, the adjudicatory order may be appealed after judgment of termination enters). Had the trial court held a dispositional hearing and concluded that a treatment plan could not be devised, father could have appealed the resulting dispositional order well before a hearing on termination of parental rights. Without having had the benefit of appellate review, when the Department moved to terminate, father's untreated problem may well have become untreatable within a reasonable time after the date of the termination hearing.
Therefore, we conclude that the proceedings here were not conducted in substantial compliance with the statutory requirements, because lack of a dispositional hearing at the time of the adjudication, when an appropriate treatment plan should have been adopted, perpetuated an initial treatment plan that clearly was not adequate. See People in Interest of B.J.D., supra.
Finally, we recognize the child's need for finality in these proceedings. See C.S. v. People, supra. However, father has agreed to permanent custody of the child with the maternal grandmother, where the child has been placed for almost two years. Further proceedings consistent with this opinion will not destabilize that placement.
If the trial court concludes on remand that an appropriate treatment plan must afford father a reasonable time within which to address his psychological problems, the custodial placement will continue during that time. If the court ultimately declines to terminate father's parental rights, he could obtain visitation with the child only to the extent and under conditions approved by the *461 court. Hence, the court could take whatever steps are necessary to protect "the health and safety of the child," such as starting with supervised visits.
Accordingly, we conclude the trial court erred in terminating father's parental rights without holding a dispositional hearing and considering an appropriate plan at or within 45 days after the time it adjudicated the child dependent and neglected as to father, and that the judgment terminating father's parental rights must therefore be reversed. On remand the trial court shall conduct a dispositional hearing at which it considers whether an appropriate treatment plan can render father at least fit to enjoy visitation with the child within a reasonable time of the hearing, and if the court so concludes, it shall address the termination of father's parental rights on that basis. Cf. People in Interest of N.F., 820 P.2d 1128 (Colo.App.1991)(noting that earlier unpublished opinion had remanded with direction that the trial court either implement the existing treatment plan or cause another appropriate treatment plan to be adopted).

II.
In light of our disposition, we need not address father's other contentions.
The judgment terminating parental rights is reversed and the case is remanded for further proceedings consistent with this opinion.
Judge TAUBMAN concurs.
Judge MARQUEZ dissents.
Judge MARQUEZ dissenting.
I respectfully dissent. In my view, the procedures followed in this case substantially complied with those mandated by the statutes, including § 19-3-505(7)(b), C.R.S.2003, requiring a dispositional hearing. In addition, the majority ignores the statutory requirement of § 19-3-604(3), C.R.S.2003, that in considering termination of the parent-child legal relationship, the court should give primary consideration to the physical, mental, and emotional conditions and needs of the child. See § 19-3-100.5(2), C.R.S.2003 (the health and safety of the child is the paramount concern). Therefore, I would affirm.
Father was incarcerated before the child was one year old, and at that time he had seen the child only on three or four occasions. Prior to termination, father filed a motion seeking visitation in which he indicated that on October 23, 2002 he was released to a halfway house operated by community corrections. At that time, father anticipated that he would be released on parole on March 28, 2003. The termination hearing was held in January 2003 when the child was five and one-half years old. Father then testified that he was still at the halfway house.
Father asserts four contentions on appeal: (1) the court improperly entered an adjudication as to him, (2) the court did not give him the opportunity to rehabilitate himself, (3) the court failed to consider and eliminate less drastic alternatives, and (4) termination of parental rights was pursued for inappropriate reasons. In determining that the judgment should be reversed, the majority focuses on its perception that the trial court failed to provide a dispositional hearing. However, I would reject each of father's contentions.

I. Adjudication
The record does not support father's contention regarding an improper adjudication.
Section 19-3-505, C.R.S.2003, sets forth the requirements for the adjudicatory hearing, findings, and adjudication. At the adjudicatory hearing, the court considers whether the allegations of the petition are supported by a preponderance of the evidence. Section 19-3-505(1), C.R.S.2003.
Here, on April 4, 2001, father signed a stipulation to continue the adjudication, which the court subsequently accepted by written order. In the stipulation, father agreed that if he had not successfully complied with the conditions, "or there is a need for continued Court involvement, the Court may enter an adjudication." Father also admitted "that [the child] is a dependent and neglected child because he is out of control through no fault of his own as alleged in ... the [Dependency and Neglect] Petition." *462 The trial court ruled that the basis for the adjudication was a need for continuing court involvement in this matter that would persist for a long period.
In view of father's stipulation, his continuous incarceration, and his lack of contact with the child, the petition was supported by the evidence. Therefore, his claim that the adjudication did not comply with the stipulation must be rejected.

II. Rehabilitation and Dispositional Hearing
In my view, the court also substantially complied with the statutory requirements regarding rehabilitation and dispositional hearings.
When the trial court substantially complies with the statute, there is a presumption of no prejudice to a parent in a termination hearing. C.S. v. People, 83 P.3d 627 (Colo.2004).
Section 19-3-505(7)(b) provides in pertinent part, "The court shall [after adjudication] hold a dispositional hearing, but such hearing may be continued on the motion of any interested party or on the motion of the court."
Section 19-3-507(1)(a), C.R.S.2003, provides that "[a]fter making an order of adjudication, the court shall hear evidence on the question of the proper disposition best serving the interests of the child and the public." When the proposed disposition is termination of the parent-child legal relationship, the hearing on termination cannot be held on the same date as the adjudication, and the dispositional hearing can be continued to the earliest available date for a hearing. Section 19-3-508(1), C.R.S.2003. Thus, the court generally treats the initial hearing after an adjudication of dependency and neglect as a "dispositional hearing." People in Interest of C.L.S., 934 P.2d 851, 853 (Colo.App.1996).
However, a treatment plan is not always required. "When the decree does not terminate the parent-child legal relationship, the court shall approve an appropriate treatment plan...." Section 19-3-508(1)(emphasis added). Section 19-3-508(1)(e)(I), C.R.S.2003, states,

Except where the proposed disposition is termination of the parent-child legal relationship, the court shall approve an appropriate treatment plan.... However, the court may find that an appropriate treatment plan cannot be devised as to a particular respondent ... due to unfitness of the parents as set forth in Section 19-3-604(1)(b) [C.R.S.2003].
(Emphasis added.) See generally People in Interest of T.W., 797 P.2d 821 (Colo.App.1990)(rejecting contention that trial court erred in refusing to adopt treatment plan).
Several dispositional alternatives are available to the court, and they include termination of the parent-child legal relationship. People in Interest of A.M.D., 648 P.2d 625 (Colo.1982)(an order adjudicating a child dependent or neglected vests the court with extensive and flexible dispositional remedies, including termination of parental rights). While the majority relies on C.L.S. to support its position on the need for a treatment plan, C.L.S. was decided in 1996, and § 19-3-508(1)(e)(I) has since been amended.
Here, the permanency goals in the family services plan were: first, permanent placement with relatives through guardianship or permanent custody and, as a concurrent goal added in June 2001, permanent placement with relatives through adoption. The court, when adjudicating the child dependent and neglected as to father, ruled that the recommendations of the family services plan were "appropriate and hereby entered by the court." Because father stipulated to a continued adjudication, the approval of the treatment plan here, preceded, rather than followed, entry of the adjudication order, as is contemplated by the statutes. See People in Interest of A.K.R., 765 P.2d 1031 (Colo.App. 1988).
Following the termination hearing, the trial court ruled that the initial treatment plan related to father's stipulation to continue the adjudication and was "appropriate" at the time "since [father] was incarcerated and therefore did not have the ability to engage in any treatment or therapy." It further ruled that father was unfit based on § 19-3-604(1)(b) *463 and found that "no appropriate treatment plan can be devised in this case."
Although father argues that there was no dispositional hearing or other treatment plan approved at the time of adjudication, § 19-3-604(1)(b) provides that parental rights may be terminated if no treatment plan can be devised to address the unfitness of the parent. The criteria for determining that no appropriate treatment plan can be devised to address unfitness include the "[e]motional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely within a reasonable time to care for the ongoing physical, mental, and emotional needs and conditions of the child." Section 19-3-604(1)(b)(I), C.R.S.2003.
Father's psychological evaluation resulted in a diagnosis of generalized anxiety disorder and antisocial personality disorder. The Department was not aware of these results until several months after the adjudication.
The Department's expert testified that the child needed a "nurturing, understanding, nonimpulsive nonreactive parent" who is able to "put the child's needs ahead of his or her own" and that father could not obtain these skills within a reasonable time. According to the expert, father had "long term chronic" and "ingrained" personality disorder.
Based on the expert's testimony and written reports, the trial court found that father "has a diagnosed emotional illness" that is "longstanding" and of "such duration or nature as to render him unlikely within a reasonable period of time to be able to" adequately parent and meet the child's needs. The court thus concluded, with record support, that although the initial treatment plan, which required only cooperation, was suitable because of father's continued incarceration, no appropriate treatment plan could be devised to address his unfitness. See §§ 19-1-103(10), 19-3-604(1)(b)(I), C.R.S.2003.
Although the expert expected that father would have benefited from therapy if it had been provided to him before the hearing, when asked if it would have been sufficient in a reasonable period of time to enable father to parent, the expert responded that he did not think so for this particular special-needs child.
In addition, there was ample evidence presented that the child would need advanced parenting skills. He was diagnosed with oppositional defiance disorder and reactive attachment disorder, which made him unable to build a secure attachment or trust-based relationship with his caregiver. As the majority points out, the petition in dependency and neglect described the child's severe behavior problems, including assault on teachers and other children, as well as self-destructive behavior. The court found that at the time of placement at the treatment center the child was very aggressive, oppositional, self-abusive, and hostile. The court also found that he still has profound needs.
During the pendency of this case, and while father was incarcerated, the child was able to establish a primary attachment with his grandmother only after a highly structured, long-term process that included extensive therapy for the child and the grandmother. It is undisputed that the child does not have any relationship with father, who has been incarcerated most of the child's life.
The court found that the child has not been in placement with either parent since sometime in 1999, father had seen him only on three or four occasions, all prior to commencement of this action, and father is a stranger to the child. One of the child's therapists testified that the child's attachment with his grandmother would be at risk if father were to have parenting time with him.
Thus, in my view, the court substantially complied with the statutory provisions, and father was accorded due process.
The state has a compelling interest in assuring that children in Colorado are neither neglected or dependent and, more affirmatively, that they are provided with a stable home atmosphere in which they may progress physically, intellectually, and emotionally. Thus, if a parent, because of a mental or emotional condition, cannot be expected to provide such a home for a child within a reasonable period, the state's compelling interest in the welfare of that child justifies the *464 termination of that parent's rights, as it did here. See People in Interest of E.I.C., 958 P.2d 511 (Colo.App.1998); see also People in Interest of A.M.D., supra (due process of law is accorded in a termination proceeding when the grounds for termination under § 19-3-604 are established by clear and convincing evidence and the underlying dependency and neglect determination is established by a preponderance of the evidence); People in Interest of M.H., 855 P.2d 15 (Colo.App.1992)(parental right to due process is subject to the power of the state to act in the child's best interest).

III. Less Drastic Alternatives
Further, before entering the order of termination, the trial court adequately considered and eliminated less drastic alternatives. See People in Interest of D.L.C., 70 P.3d 584 (Colo.App.2003).
In considering the termination of the parent-child legal relationship, the court should give primary consideration to the physical, mental and emotional conditions and needs of the child. Section 19-3-604(3); C.S. v. People, supra; People in Interest of M.B., 70 P.3d 618 (Colo.App.2003); People in Interest of D.L.C., supra. As the legislative declaration states, the health and safety of the child is the paramount concern. Section 19-3-100.5(2).
"Thus, long-term placement or legal guardianship with a relative is not a viable less drastic alternative if the child needs a stable, permanent home that can be assured only by adoption." People in Interest of M.B., supra, 70 P.3d at 627.
Here, the trial court specifically considered custody in the child's grandmother without termination. The court determined, however, "that such an order would only create uncertainty and serve no purpose for [the child]," would not serve his needs or improve his behavior, and would only cause problems for his caregiver and aggravate the child's own problems.
The record supports the court's finding rejecting guardianship or custody as a less drastic alternative to termination, and that finding may not be disturbed on review. See People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).

IV. Termination
Nor would I conclude that termination of father's parental rights violated his fundamental liberty interest in the care, custody, and management of his child.
The interest of parents in the care, custody, and management of their children implicates a fundamental liberty interest, and termination of parental rights requires a compelling state interest. See People in Interest of E.I.C., supra. Here, the state had a sufficient compelling interest in protecting the child to justify termination of father's parental rights. See People in Interest of E.I.C., supra.
For these reasons I would affirm.