24CA1960 Peo in Interest of ZY 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1960
El Paso County District Court No. 23JV30048
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.Y. and A.Y., Children,

and Concerning C.G. and D.Y.,

Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Welling and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Kenneth R. Hodges, County Attorney, Melanie E. Gavisk, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant C.G.

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Fort Collins, Colorado for Appellant D.Y.

¶ 1    C.G. (mother) and D.Y. (father) appeal the judgment terminating their parent-child legal relationships with Z.Y. and A.Y. (the children). We affirm.

## I. Background

¶ 2    In January 2023, the El Paso County Department of Human Services received a report that the children — who were then approximately seventeen months and three months old — were found unsupervised inside a condemned house. Based on this report, along with concerns about the parents' substance abuse and domestic violence in their relationship, the Department filed a petition in dependency or neglect. The parents admitted to the allegations in the petition and agreed to a deferred adjudication under section 19-3-505(5), C.R.S. 2024.

¶ 3    As a condition of the deferred adjudication, the parents agreed to comply with appropriate treatment plans adopted by the juvenile court. After holding dispositional hearings, the court adopted the following treatment plans for the parents:

- Mother — cooperate with the Department and treatment providers; participate in family time; address substance abuse, domestic violence, and mental health issues;

1

demonstrate parental protective capacity; establish and
maintain self-sufficiency; and engage in life skills
training.

- Father — participate in family time; provide a safe and
  stable environment; engage in life skills training; abstain
  from criminal activity; and address substance abuse and
  domestic violence issues.

¶ 4 In December 2023, the Department moved to terminate the
parents' parental rights. Two months later, the Department also
moved to revoke the deferred adjudications. The juvenile court
determined that it could hold a single hearing for both motions,
which it did over four days between May and September of 2024.
After hearing the evidence, the court revoked the deferred
adjudications, entered formal adjudication orders, and terminated
the parents' parental rights.

## II. Dispositional Hearing

¶ 5 The parents assert that the juvenile court erred by not holding
separate adjudicatory and termination hearings. They maintain
that, as a result, the court failed to conduct a dispositional hearing

after formally adjudicating the children dependent or neglected. We discern no reversible error.

¶ 6    A dependency or neglect proceeding begins with the filing of a petition setting forth the department's allegations. § 19-3-502(1), C.R.S. 2024. If the department proves the allegations, the court will sustain the petition and adjudicate the child dependent or neglected. § 19-3-505(7)(a). Then, the court should hold a dispositional hearing, and unless the disposition is termination of parental rights, it must adopt an appropriate treatment plan. *See* §§ 19-3-507, 19-3-508, C.R.S. 2024. If the parent fails to comply with the treatment plan, the department or guardian ad litem (GAL) can file a motion to terminate parental rights, which "shall be considered at a separate hearing following an adjudication." § 19-3-602(1), C.R.S. 2024.

¶ 7    After finding that the allegations in the petition are supported by a preponderance of the evidence, as described above, the juvenile court may enter a "deferred adjudication" in lieu of entering a formal adjudication order. *See* § 19-3-505(5); *see also People in Interest of N.G.*, 2012 COA 131, ¶ 22. Under this procedure, the court may postpone entry of the adjudication order for a total of

3

twelve months, with the parties' consent, after they are "fully informed by the court of their rights." § 19-3-505(5)(a)-(b). Before revoking the deferred adjudication and entering an adjudication order, the parent may request an evidentiary hearing to present evidence of events that have occurred during the deferral period. *See N.G.*, ¶ 2.

¶ 8     To begin, the Department and GAL assert that parents did not properly preserve their argument for appeal. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (appellate courts do not address unpreserved issues in civil proceedings, such as a dependency or neglect case). We need not resolve this question because, whether we conclude that the parents have failed to preserve the issue for appellate review, or whether we address the issue, the outcome is the same. *See L&R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where outcome would not change); *People in Interest of R.R.*, 607 P.2d 1013, 1015 n.2 (Colo. App. 1979).

¶ 9     We conclude that the juvenile court substantially complied with the procedures outlined in the Colorado Children's Code and the parents did not suffer any harm from the court's procedure.

*See People in Interest of Z.P.S.*, 2016 COA 20, ¶ 40 ("Substantial compliance with the dependency [or] neglect statutes creates a presumption of no prejudice to a parent in a termination hearing."); C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

¶ 10    First, although the juvenile court may not have done everything in the correct sequence, it completed all the steps necessary to satisfy the requirements of the Children's Code.  *See Z.P.S.*, ¶ 40.  The record shows that the parents consented to entry of a deferred adjudication and were fully advised of their rights.  *See* § 19-3-505(5)(a).  As a condition of the deferred adjudication, the parents had to comply with appropriate treatment plans.  After the entry of the deferred adjudications, the juvenile court held dispositional hearings for the parents, after which it adopted appropriate treatment plans for each of them.  §§ 19-3-507, 19-3-508.  Before the deferred adjudications expired, the Department moved to revoke the adjudications, based on the parents' failure to comply with their treatment plans.  The court ultimately revoked the deferred adjudications and entered an adjudication order; it did so after hearing evidence of the parents'

5

failure to comply with their treatment plans. *See N.G.*, ¶ 2. Finally, after revoking the deferred adjudications, the court found that the Department had proven the criteria in section 19-3-604(1)(c), C.R.S. 2024, by clear and convincing evidence.

¶ 11 Second, we are not persuaded that the parents suffered any harm based on the juvenile court's procedure. Specifically, the parents have not explained how they were prejudiced by the court's failure to hold a dispositional hearing after revoking the deferred adjudication. To be sure, father requested an amended treatment plan in his closing argument, but he did not challenge the court-approved plan's appropriateness, explain why he needed an amended treatment plan, or provide any details as to what needed to be amended. Likewise, on appeal, neither parent asserts that the treatment plans were inappropriate, nor do they explain what would have changed in their treatment plans had the court held a dispositional hearing after revoking the deferred adjudication.

¶ 12 We are not persuaded otherwise by *People in Interest of B.C.*, 2018 COA 45, or *People in Interest of D.R.W.*, 91 P.3d 453 (Colo. App. 2004), on which the parents rely. Those cases are distinguishable because, unlike in the present case, the juvenile

6

courts in those cases never adopted appropriate treatment plans for the parents. *See B.C.*, ¶ 14 (the court never held a dispositional hearing or adopted an appropriate treatment plan for the parent); *D.R.W.*, 91 P.3d 458-59 (the court adopted a barebones treatment plan for the parent and never amended it once it revoked the deferred adjudication). In other words, the divisions reversed the judgments not because the courts failed to hold dispositional hearings, but because they did not adopt appropriate treatment plans at dispositional hearings.

¶ 13    The present case is more like *People in Interest of T.E.H.*, 168 P.3d 5 (Colo. App. 2007). In that case, like in this one, the juvenile court entered a deferred adjudication, held a dispositional hearing, and adopted an appropriate treatment plan, but it did not conduct a second dispositional hearing after revoking the deferred adjudication. *Id.* at 8. The *T.E.H.* division distinguished *D.R.W.* because the juvenile court in *T.E.H.* had adopted a treatment plan that "specifically addressed the parenting problems that gave rise to the children's adjudications" and concluded that the parent was not prejudiced. *Id.* Because we are persuaded by the analysis in *T.E.H.*, we follow it here. *See People v. Smoots*, 2013 COA 152, ¶ 20

(one division of the court of appeals is not obligated to follow precedent established by another division), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

### III.   Fit Within a Reasonable Time

¶ 14    The parents contend that the juvenile court erred by finding that they could not become fit within a reasonable time.  We disagree.

¶ 15    Whether the juvenile court properly terminated parental rights under section 19-3-604 is a mixed question of fact and law.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 16    To terminate parental rights under section 19-3-604(1)(c), the juvenile court must find, among other things, that (1) the parent is unfit and (2) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c)(II), (III).  A parent is unfit if the parent's conduct or condition renders the parent unable or unwilling to give the child reasonable parental care.  *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007).  When

deciding whether a parent can become fit within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

¶ 17 The juvenile court found that the parents were unlikely to become fit in a reasonable time. It noted that, based on the children's age and the duration the case had been open, a reasonable time had already passed. As to mother, the court noted that she had not shown any significant change during the case. As for father, the court found that he had made substantial progress in the final three months of the case after he was sentenced to a residential community corrections facility. But the court noted that father still needed to demonstrate his ability to change outside of a residential facility, which would not occur for "some time." *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (even "increased compliance" over the course of a case may not justify more time).

¶ 18 The record supports the juvenile court's findings. The caseworker testified that mother attended family time

9

inconsistently, did not complete either a substance abuse or mental health evaluation, failed to submit drug screens, completed a domestic violence evaluation but did not comply with the treatment recommendations, and did not participate in life skills training until the very end of the case. As for father, the caseworker said that, up until the final three months of the case, father inconsistently attended visits, did not complete a substance abuse or domestic violence evaluation, and did not submit drug screens. However, the caseworker said that, once father transitioned to community corrections, he had completed the substance abuse and domestic violence evaluations and started engaging in treatment.

¶ 19    Mother asserts that the evidence shows that she was "making sufficient progress to warrant additional time to complete her rehabilitation." For example, she points to evidence that she had employment, engaged in life skills training, was "on the verge of obtaining a stable residence," and demonstrated parenting skills during the family time she attended. But we must reject mother's argument because it would require us to reweigh the evidence, which we cannot do. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

¶ 20    Father asserts that the juvenile court erred because its "findings were not based on the evidence presented." Specifically, he maintains that there was no evidence that he was using fentanyl or methamphetamine around April 2024 or that he was incarcerated at that time because of his substance use. We disagree.

¶ 21    First, contrary to father's assertion, the record supports the juvenile court's findings. *See People in Interest of L.M.*, 2018 COA 57M, ¶ 17 ("[T]he inferences and conclusions to be drawn from [the evidence] are within the juvenile court's discretion."). For example, the probation officer testified that father admitted to using substances when he was "under revocation" between December 2023 and May 2024. The probation officer also testified that father did a mouth swab at some point in 2024, which was positive for methamphetamine. The court took judicial notice of father's criminal case, and in that case, the probation officer filed a second motion to revoke probation, along with a request for a warrant in April 2024, alleging that father had tested positive for methamphetamine and admitted to fentanyl use. The criminal

11

court issued a warrant based on this request, and father was arrested.

¶ 22     Second, even if we were to assume that the evidence did not support the specific findings challenged by father, we still discern no reversible error.  The court found that father could not become fit for at least eleven months because (1) he would not be released from community corrections for five months and (2) needed six months of demonstrated sobriety in the community after that.  Even if there was no direct evidence of father's substance use in April 2024, that does not undermine the court's finding that he needed to establish sobriety after being released from community corrections, considering that he did not demonstrate sobriety at any point during the case, except when he was incarcerated.  And in any event, whether father needed five months or eleven months to become fit was irrelevant because the court found that no additional time would be reasonable for these children to wait.  *See S.Z.S.*, ¶ 24 (noting that a court must consider the child's physical, mental, and emotional conditions and needs when deciding what constitutes a reasonable time).

## IV. Reasonable Efforts

¶ 23 Father argues that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate him and reunify him with the children. We disagree.

¶ 24 Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

¶ 25 In deciding whether to terminate parental rights, the juvenile court must consider whether the department made reasonable efforts to rehabilitate the parent and reunite the parent with the child. *See* §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. The reasonable efforts standard is satisfied if the department provides appropriate services in accordance with section 19-3-208. § 19-1-103(114). These services may include (1) screening, assessments, and individual case plans; (2) home-based family and crisis counseling; (3) information and referral services; (4) family time; and (5) placement services. § 19-3-208(2)(b).

¶ 26    The juvenile court found that the Department made reasonable efforts to rehabilitate father, but he did not adequately participate in the services to become a fit parent. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12 (the court may consider a parent's unwillingness to participate in determining whether the department made reasonable efforts). The record supports the court's findings. Among other things, the record shows that the Department referred father to substance abuse and domestic violence evaluations, which he did not participate in until the end of the case. The record also shows that the Department referred father to at least five different family time service providers, but he had not attended any family time since 2023. The Department also gave father bus passes, bought him multiple cell phones, and paid for him to stay in a hotel for an extended time.

¶ 27    Still, father asserts that the Department failed to make reasonable efforts by not providing him family time, screenings, or assessments while he was incarcerated. We are not persuaded. The caseworker testified that the Department made referrals for father to have video visits while in the jail. She also said that the Department put in referrals for providers to go into the jail to

complete substance abuse and domestic violence evaluations. Based on this evidence, the court found that, even though father did not always get visits and did not complete the evaluations in the jail, the Department had still made reasonable efforts to get those services to him. Because the record supports this finding, we reject father's argument. *Cf. People in Interest of E.D.*, 2025 COA 11, ¶ 3 (holding that a department can satisfy its reasonable efforts obligation by making therapeutic family time services available even if those efforts "don't successfully result in face-to-face contact").

## V. Disposition

The judgment is affirmed.

JUDGE WELLING and JUDGE JOHNSON concur.