**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**In the Interest of M.H., a Child,**

**and Concerning T.H., Respondent– Appellant.**

**No. 92CA0002.**

Colorado Court of Appeals, Div. II.

Dec. 3, 1992.

Rehearing Denied Feb. 4, 1993.

Certiorari Denied June 14, 1993.

Robert J. Loew, County Atty., and Marilyn R. Mihalik, Asst. County Atty., Commerce City, for petitioner-appellee.

Cooper & Cooper, P.C., Deborah A. Cooper, Broomfield, Guardian ad litem.

Barry E. Glasgow, Brighton, for respondent-appellant.

Opinion by Judge REED.

T.H., father, appeals from the judgment terminating his father-child legal relationship with his son, M.H. We affirm.

In 1986, the father's household included M.H., another son from an earlier marriage, his live-in girlfriend, and her children. A daughter of the girlfriend, who was the same age as M.H., suffered severe non-accidental trauma, which left her in a semi-vegetative state. No charges were filed at that time but the children were removed from the home.

M.H. and his older half-brother were subsequently adjudicated dependent and neglected. A treatment plan was adopted in the attempt to correct the problems within the family including the father's potential for violent impulsive behavior and lack of insight.

In the following years, M.H. alternated residence between his parents and a succession of foster homes. During this time, the father did take M.H. to therapy, but did not involve himself therein.

After father's relationship with his girlfriend ended in 1988, he was charged with felony child abuse of the girlfriend's daughter. It appears that M.H. and another of the children implicated the father in that child's injury. While that charge was pending, M.H. also claimed that his father

had sexually assaulted him. Eventually, the father was convicted of felony child abuse of the girlfriend's daughter and of attempted sexual assault of M.H.

Prior to the hearing on the motion to terminate, the father obtained an expert pursuant to § 19–3–607(1), C.R.S. (1992 Cum.Supp.). After evaluating the father, this expert sought to have a parent-child interactional evaluation. However, M.H.'s therapist, the social services caseworker, and a physician who had conducted an earlier evaluation testified that contact with his father would be damaging to M.H., and based on that testimony, the court denied the motion.

At the termination hearing, M.H.'s half-brother, who is now an adult, sought custody of M.H. as a less drastic alternative to termination. The trial court found, *inter alia*, that the treatment plan had not been successful and that the father was an unfit parent. It further found that placement with the half-brother was not in M.H.'s best interests and terminated the parent-child legal relationship between father and M.H.

## I.

The father contends that the trial court denied his due process and equal protection rights under § 19–3–607(1) when it refused the request for a parent-child interactional evaluation by his expert. We do not agree.

 A parent has a fundamental liberty interest in the care, custody, and management of his child. In order to protect that liberty interest, due process requires the state to provide fundamentally fair procedures to a parent in any termination proceeding. *See B.B. v. People*, 785 P.2d 132 (Colo.1990). However, that parental right to due process is subject to the power of the state to act in the child's best interest. *See People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982); § 19–1–102, C.R.S. (1992 Cum.Supp.).

Section 19–3–607(1), C.R.S. (1992 Cum.Supp.) provides that an indigent parent has a right to have an expert appointed whose fees shall be paid by the state. This statute is part of the Children's Code's efforts to provide fundamentally fair procedures to parents in actions to terminate parental rights. *B.B. v. People, supra.*

However, the Children's Code also requires that *primary* consideration be given to the physical, mental, and emotional conditions and needs of the child. Section 19–3–604(3), C.R.S. (1992 Cum.Supp.). Therefore, a parent's statutory right to have an expert appointed to assist him in a termination proceeding may be limited in scope if necessary because of the physical, mental, and emotional conditions of the child.

Here, an expert was appointed for the father at state expense who did evaluate the father and present testimony on his behalf. The evidence is also undisputed that it was not in the child's interests to come into contact with the father and that serious emotional detriment could result therefrom. Thus, the trial court properly limited the father's expert by placing primary consideration on the child's condition and refusing to permit a parent-child interactional evaluation. *See* § 19–3–604(3).

The father has advanced no argument to support his claim of violation of equal protection rights, and we are aware of no authority for such a proposition. We conclude the argument is devoid of merit.

## II.

We also reject the father's contention that the trial court erred in rejecting the placement of M.H. with his half-brother as a less drastic alternative to termination. There is evidence in the record to support the trial court's conclusion that the half-brother lacked an appreciation of the gravity of the father's criminal acts and their effect on M.H. so that it was in M.H.'s best interest to terminate the parent-child relationship. *See People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

Judgment affirmed.

PIERCE and RULAND, JJ., concur.