The PEOPLE of the State of Colorado, Petitioner–Appellee, In the Interest of C.L.S., a Child,

And Concerning M.L.S., Respondent–Appellant.

No. 94CA1379.

Colorado Court of Appeals, Div. IV.

Aug. 8, 1996.

Rehearing Denied Sept. 19, 1996.

Certiorari Denied March 24, 1997.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

Daniel E. Muse, City Attorney, Michael J. Stafford, Assistant City Attorney, Denver, for Petitioner–Appellee.

Diana M. Richett, Guardian Ad Litem.

M.L.S., Pro Se.

Opinion by Judge BRIGGS.

Respondent, M.L.S. (father), *pro se*, appeals the order of the juvenile court adjudicating his daughter, C.L.S. (child), to be dependent and neglected as to the father and its order adopting a treatment plan for him. The father contends, among other things, that the juvenile court lacked jurisdiction over the dependency and neglect adjudication, that the court erred in granting the guardian ad litem's motion in limine to allow the use of the child's out-of-court statements during the dependency and neglect proceedings, and that it erred in ordering an initial treatment plan in conflict with the jury's findings in the proceedings adjudicating the child dependent and neglected as to him. We affirm.

## I.

As an initial matter, we must address the guardian ad litem's contention that we lack jurisdiction over the trial court's dispositional order, which adopted the recommended treatment plan with an additional condition. We conclude that both the dependency and neglect adjudication and the initial dispositional order were subject to appeal.

 Dependency and neglect proceedings are subject to the requirement of a final judgment in C.A.R. 1(a)(1). *People in Interest of P.L.B.*, 743 P.2d 980 (Colo.App.1987). Ordinarily, a final judgment is one "which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." *People in Interest of E.A.*, 638 P.2d 278, 282 (Colo.1981).

Looking only to the definition of "final," it can be argued that neither an adjudication that a child is dependent or neglected nor an initial dispositional order is properly the subject of appeal. However, we do not write on a clean slate, and we cannot ignore important public policies relevant to our determination.

Our inquiry begins with consideration of the nature of the proceedings under the Children's Code and those cases interpreting the Code. *See E.O. v. People*, 854 P.2d 797 (Colo. 1993).

The Code provides for a bifurcated proceeding in a dependency and neglect action. In the first phase, the court determines if there are grounds to adjudicate the child dependent and neglected. If the court sustains the petition, the second, or dispositional, phase commences with a hearing and adoption of a treatment plan.

As the supreme court reconfirmed in *E.O. v. People, supra*, 854 P.2d at 800:

> The Children's Code permits the court to bifurcate the adjudicatory and dispositional hearings and to continue the dispositional hearing to some future date. The adjudication of a child as dependent or neglected, with the dispositional hearing continued to a future date, does not become a final judgment *until a decree of disposition is entered*. (emphasis added)

What is not clear is whether the supreme court, in referring to a "decree of disposition," was referring to the initial order entered after an adjudication that a child is dependent or neglected, which typically adopts a treatment plan and leaves the issue of termination of parental rights for later determination, or the final decree entered in the proceedings, which may include a termination of parental rights.

The Code treats the initial hearing after an adjudication of dependency and neglect as a "dispositional" hearing. Section 19–3–507, C.R.S. (1995 Cum.Supp.). The resulting "de-

cree of disposition" may postpone a decision about termination of parental rights, instead placing the child in the legal custody of one or both parents or the guardian, a relative, or the county department of social services or a child placement agency for placement in a family care home or other child care facility. Sections 19–3–508(1)(a) to 19–3–508(1)(c), C.R.S. (1995 Cum.Supp). Regardless of placement, the court "shall" approve an appropriate treatment plan. Section 19–3–508(1)(e)(I), C.R.S. (1995 Cum.Supp.). The statutory scheme is thus clear in treating an initial dispositional order adopting a treatment plan as a "decree of disposition."

■ Furthermore, a natural parent has a fundamental liberty interest in the care, custody, and management of a child. It is therefore essential that a state accord fundamentally fair procedures to a parent when the state seeks to intervene in the parent-child legal relationship. *See B.B. v. People*, 785 P.2d 132 (Colo.1990); *People in Interest of M.H.*, 855 P.2d 15 (Colo.App.1992).

The supreme court has determined that orders entered before the initial dispositional order, including an adjudication that a child is dependent or neglected, are not subject to appeal. *People in Interest of E.A., supra.* Likewise, post-dispositional orders that do not terminate the right to parental custody are generally held not to be final and appealable. *See E.O. v. People, supra; People in Interest of H.R.*, 883 P.2d 619 (Colo.App. 1994).

If we were to conclude that no appeal lies upon the entry of the initial dispositional order, the result would be that a child could be adjudicated dependent and neglected, removed from the parent, and placed outside the family home for many months if not years with neither the parent nor the child having a right to appeal. No later correction of an improper adjudication or dispositional order could undo the harm caused by the unjust disruption of the parent-child relationship.

■ We therefore conclude that, following an adjudication of dependency and neglect, the initial dispositional order adopting a treatment plan constitutes a "decree of dispo-

sition" and renders the adjudication and the initial dispositional order final for purposes of appeal. *See People in Interest of E.A., supra; People in Interest of B.M.*, 738 P.2d 45 (Colo.App.1987); *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990)(because of importance of parents' rights to raise children and the adverse impact of delaying appeal until termination of parental rights, adjudication that child is dependent or neglected followed by disposition awarding temporary custody to agency is subject to appeal).

Our reliance in part on *People in Interest of B.M., supra*, is not without recognition that the supreme court disapproved of the holding in that case to the extent it conflicted with its holding in *E.O. v. People, supra.* However, the holding in *E.O.* pertained to a proposed amendment to a treatment plan, not the initial dispositional order adopting a treatment plan. We do not read *E.O.* as contrary to our holding.

■ Here, the mother had sole legal custody at the time the child was adjudicated dependent and neglected as to the father. As a result, the juvenile court's order did not include any change in legal custody. However, the court's ruling was the initial dispositional order adopting a treatment plan, which we note prohibited the father from seeing his daughter for at least several months and potentially through the conclusion of proceedings and entry of a judgment terminating his parental rights. We therefore hold that, upon its entry, the father had the right to appeal both the order adjudicating the child dependent and neglected as to him and the court's initial dispositional order adopting the treatment plan. *See People in Interest of B.M., supra.*

## II.

■ The father contends, in effect, that, because his alleged acts of sexual abuse of the child occurred in Wyoming and because it was inconvenient for witnesses living in Wyoming to testify in Colorado, the Colorado juvenile court lacked jurisdiction over the proceedings resulting in the adjudication that

the child was dependent and neglected. We disagree.

The child and her mother had lived in Colorado for more than two years at the time the petition in dependency and neglect was filed by the state. On this basis, Colorado had an interest in protecting the child sufficient to adjudicate whether she was dependent and neglected. *See L.G. v. People*, 890 P.2d 647 (Colo.1995).

## III.

The father asserts that the juvenile court erred in granting the guardian ad litem's motion in limine to admit the child's out-of-court statements during the proceedings to adjudicate whether the child was dependent and neglected because they were "proven all wrong by the jury." We perceive no abuse of discretion.

▮ Whether a child's out-of-court statements describing sexual contact or abuse are admissible under § 13–25–129, C.R.S. (1987 Repl.Vol. 6A) is a determination within the discretion of the trial court. *People v. Gillispie*, 767 P.2d 778 (Colo.App.1988). Once evidence is admitted, however, it is the function of the jury to determine its probative value and weight and the credibility of the witnesses. *See Kiefer Concrete, Inc. v. Hoffman*, 193 Colo. 15, 562 P.2d 745 (1977).

▮ Here, the father does not assert that the juvenile court's admission of the child's statements violated the requirements of § 13–25–129. Rather, he argues only that admission of the statements was erroneous because the jury ultimately found the child had not been subjected to mistreatment or abuse. However, that the jury may not have credited the child's statements has no bearing on whether the statements were properly admitted into evidence. We conclude the trial court did not abuse its discretion in admitting the child's statements.

## IV.

The father's next contention is that the juvenile court erred in ordering a treatment plan that required, among other things, that he be evaluated and possibly treated for sexual aggression. He argues that the treatment plan could not include such a requirement because, although the jury had found the child to be dependent and neglected as to him, it had found that he had not subjected the child to "mistreatment or abuse." We disagree.

The adjudication of whether a child is dependent and neglected involves a hearing distinct from, and is for a purpose different than, the determination of a proper disposition of a child so adjudicated. The adjudication merely determines the status of the child at the time of the hearing. In contrast, the dispositional hearing requires the court to hear evidence on the question of the disposition, including a treatment plan, that will be in the best interests of a child previously adjudicated dependent or neglected and of the public. *See* §§ 19–3–505, 19–3–507, & 19–3–508, C.R.S. (1995 Cum.Supp.); *People in Interest of P.D.S.*, 669 P.2d 627 (Colo.App. 1983); *People in Interest of K.S.*, 33 Colo. App. 72, 515 P.2d 130 (1973).

The trial court has discretion to formulate a treatment plan reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs. *See* § 19–3–508(1)(e), C.R.S. (1995 Cum. Supp.); *People v. District Court*, 731 P.2d 652 (Colo.1987); *see also People in Interest of S.S.T.*, 38 Colo.App. 110, 553 P.2d 82 (1976).

▮ Here, the jury found that the child had not been subjected to mistreatment or abuse. However, it also found that the father failed or refused to provide proper or necessary subsistence or any other care necessary to her health, guidance, or well-being. The child was therefore adjudicated to be dependent and neglected.

At the dispositional hearing after that adjudication, the court allowed testimony from the father's younger brother, who had not come forward to testify at the adjudication, that the respondent-father had for years sexually molested him when he was a child. In its ruling from the bench, the juvenile court expressed concern about the brother's testi-

mony and testimony of a similar nature given at the earlier adjudication. It then observed:

> I am not here to determine whether [the father] has sexually abused this child or not. And I don't believe it's necessary in order to determine the appropriate treatment plan components because there is sufficient evidence in the record, such as from the testimony of the [father's brother] and from the testimony of [an expert] describing stroking behaviors, which may not actually be sexually abusive but clearly inappropriate and may be a grooming procedure, which suggests there may be a strong potential for sexual abuse in the future if not treated.

The juvenile court therefore included in the treatment plan a requirement that the father submit to an evaluation focusing on sexual aggression and that any recommendations pursuant to that evaluation be followed as part of the treatment plan.

We agree with the juvenile court that the specific ground on which the jury found the child to be dependent and neglected did not restrict the juvenile court's discretion to formulate a treatment plan in the best interests of the child. We further perceive no abuse of discretion in the juvenile court's decision, based on the evidence before it, to require the father to submit to a sexual aggression evaluation and possible treatment as a component of the treatment plan.

The father's other arguments are without merit.

Order affirmed.

DAVIDSON and TAUBMAN, JJ., concur.