25CA0514 Peo in Interest of EJW 08-14-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0514
Arapahoe County District Court No. 24JV30192
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.J.W., a Child,

and Concerning R.R.W.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHUTZ
Fox and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 14, 2025

---

Ron Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, R.R.W. (father) appeals the judgment adjudicating E.J.W. (the child) dependent and neglected and the order adopting a treatment plan. We affirm.

## I.    Background

¶ 2    After receiving a referral raising concerns about mother's substance abuse and mental health, the Arapahoe County Department of Human Services (Department) filed a petition in dependency or neglect. The Department noted that the extent of father's involvement with the child was unknown.

¶ 3    Six months later, father entered a no-fault admission, and the juvenile court adjudicated the child dependent and neglected. *See* 19-3-102(1)(e), C.R.S. 2024 ("A child is neglected or dependent if . . . [t]he child is homeless, without proper care, or not domiciled with his or her parent . . . through no fault of such parent . . . ."). Following a contested dispositional hearing, the court adopted a treatment plan for father that included a requirement that he participate in a domestic violence assessment and complete domestic violence treatment.

## II. Admission and Adjudicatory Order

¶ 4 Father first argues that the juvenile court erred by accepting his admission because he purportedly did not realize that the court could adopt a treatment plan requiring him to complete a domestic violence evaluation and treatment. Father argues that if he knew these requirements were possible, he would not have agreed to the no-fault admission. We reject his contentions.

### A. Preservation

¶ 5 The Department and guardian ad litem dispute whether father preserved this issue because he did not inform the court of any agreement between he and the Department concerning the terms of his anticipated treatment plan and failed to object when the court set a contested dispositional hearing to address whether the plan should include a domestic violence component.

¶ 6 Father asserts he did not have an adequate opportunity to preserve the issue because the error only became known after the court accepted his admission. However, we need not determine whether father preserved the issue, or was required to, because even if we assume preservation, we discern no basis for reversal.

2

### B. Applicable Law and Standard of Review

¶ 7 After a department files a petition in dependency and neglect, a parent may demand a jury trial and require that the state prove the allegations of the petition. § 19-3-202(2), C.R.S. 2024. Alternatively, the juvenile court may accept a parent's admission at an adjudicatory hearing. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 32. Before accepting a parent's admission, the court must find that (1) the parent understood their rights, the allegations in the petition, and the effect of the admission; and (2) the admission was voluntary. C.R.J.P. 4.2(c) (2024). The "court's acceptance of [a parent's] admission establishe[s] the status of the children as dependent or neglected." *J.W.*, ¶ 32.

¶ 8 A juvenile court's determination that the parent's admission was knowing and voluntary is a question of fact that we review for an abuse of discretion. *See People in Interest of W.P.*, 2013 CO 11, ¶ 10. A court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law." *People in Interest of E.B.*, 2022 CO 55, ¶ 14.

## C. Additional Background

¶ 9 Before accepting father's admission, the juvenile court asked if he understood that he had the right to (1) an attorney; (2) a trial where the Department would have to demonstrate by a preponderance of the evidence that the child was dependent or neglected; (3) cross-examine witnesses who testified against him and present witnesses to testify on his behalf; (4) submit any defense to the allegations; and (5) appeal the decision if the child were found to be dependent or neglected. The court also advised that it would "retain jurisdiction over [father] and over [his] treatment plan," and that the ultimate outcome of the case could be termination of his parental rights.

¶ 10 Father confirmed his understanding of these rights. He also confirmed that he was making his admission freely and voluntarily and that no one had coerced him or made him a promise that had not been discussed at the hearing. After this advisement, the juvenile court found that father intelligently, voluntarily, and knowingly, admitted the child was dependent or neglected, and entered the adjudication.

¶ 11 The juvenile court then asked father's counsel how much time was needed for a contested dispositional hearing. Father's counsel initially requested a case management conference (CMC) and uncontested dispositional hearing but stated "if we need to set contested, we'll let you know."

¶ 12 After the Department raised concerns regarding potential delay, the court allowed the parties time to confer instead of setting a CMC. Following this discussion, the parties returned to the courtroom and informed the court that they agreed on all treatment plan objectives other than the domestic violence (DV) portion and requested a contested hearing to address that objective.

## D. Analysis

¶ 13 Father asserts that he was deprived of fundamentally fair procedures when the juvenile court accepted his admission prior to addressing his treatment plan, thereby depriving him of "bargaining power" when discussing his treatment plan requirements.

¶ 14 However, father was represented by counsel, received timely notice of the adjudicatory hearing, and was advised of his rights and the effect of his admission as required by C.R.J.P. 4.2(c) (2024). *See C.S. v. People*, 83 P.3d 627, 639 (Colo. 2004) (describing that

substantial compliance with the statute and applicable court rules protects a parent's fundamental rights); *see also In re E.R.S.*, 2019 COA 40, ¶ 41 (finding similar procedures to be fundamentally fair).

¶ 15    Furthermore, nothing in the Children's Code requires a treatment plan to be discussed at an adjudicatory hearing. *See* § 19-3-507(1)(a), C.R.S. 2024 ("*After* making an order of adjudication, the court shall hear evidence on the question of the proper disposition . . . .") (emphasis added). Dispositional alternatives include the adoption of a treatment plan or the finding that an appropriate treatment plan cannot be devised. Thus, the procedures for a court to follow before accepting a parent's admission to the petition do not require the court to advise a parent concerning specific terms that may be included in a treatment plan. *See People in Interest of C.L.S.*, 934 P.2d 851, 855 (Colo. App. 1996) ("The adjudication of whether a child is dependent and neglected involves a hearing distinct from, and is for a purpose different than, the determination of a proper disposition of a child so adjudicated."); *see also E.O. v. People*, 854 P.2d 797, 800 (Colo. 1993) (noting that the Children's Code permits a bifurcated proceeding where the court first determines whether there are

6

grounds to adjudicate the child dependent or neglected and, if so, it proceeds to the second, or dispositional phase, which commences with entry of a dispositional order and adoption of a treatment plan).

¶ 16    Thus, we discern no error in the juvenile court's acceptance of father's admission without first advising him that he may be required to complete a domestic violence evaluation as part of his treatment plan if warranted by the findings at the dispositional hearing.

### III.    Father's Treatment Plan

¶ 17    Father also asserts that the juvenile court erred by adopting the domestic violence objective of his treatment plan.  We disagree.

#### A.    Applicable Law and Standard of Review

¶ 18    The juvenile court has discretion to formulate an appropriate treatment plan for a parent.  *C.L.S.*, 934 P.2d at 855.  An appropriate treatment plan means a plan "approved by the court that is reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs."  § 19-1-103(12), C.R.S. 2024.  A treatment plan's appropriateness is measured by the likelihood of

success in reuniting the family free of ongoing department involvement and must be assessed in light of the facts existing at the time it is approved and the safety concerns identified during the assessment of the family. *People in Interest of K.B.*, 2016 COA 21, ¶ 14; *People in Interest of D.C-M.S.*, 111 P.3d 559, 561 (Colo. App. 2005). Because the purpose of a treatment plan is to address the barriers to reunifying families, it may include issues that were not the basis for the adjudication judgment. *People in Interest of M.W.*, 2022 COA 72, ¶ 43. Generally, a court may require treatment "when it is warranted by the record before the court." *People in Interest of L.M.*, 2018 COA 57M, ¶ 51.

## B. Analysis

¶ 19 After hearing the evidence at the dispositional hearing, the juvenile court adopted the domestic violence objective, which required, among other things, that father "complete an assessment to evaluate [the] level of treatment needed" and "fully participate in domestic violence treatment." The court found that the treatment plan, including the domestic violence objective, (1) was reasonably calculated to render father fit to provide adequate parenting to the child within a reasonable period; (2) related to the child's needs; (3)

provided objectives to address safety concerns; and (4) was in the child's best interests. In so finding, the court focused on the need to ensure father's home was physically and emotionally safe for the child.

¶ 20 These findings are supported by the record. The juvenile court took judicial notice of father's two prior DV-related criminal convictions (harassment and stalking), including the findings, sentences, and unsuccessful termination of probation. The caseworker testified that she was concerned that the child would witness domestic violence in the future if she was returned to father absent an appropriate domestic violence assessment and completion of any indicated treatment. Based on her training, the caseworker described the traumatic impact domestic violence can have on children. She opined that the domestic violence objective of the treatment plan was necessary to make father a fit and proper parent.

¶ 21 Father first argues that, because domestic violence was not a concern at the outset of the case, the juvenile court erred by adopting that treatment plan objective. But the court found that father had a history of domestic violence with mother and, although

9

it was in the past, it was not significantly distant in time. The court also noted that father's probation was unsuccessfully terminated approximately two years prior to the dispositional hearing.

¶ 22 Even though domestic violence was not the initial concern that brought the family to the Department's attention, the purpose of a treatment plan is to address "the material issues that are barriers to reunifying children with their parents." *See M.W.*, ¶ 43 ("Because the purpose of a treatment plan is to address the material issues that are barriers to reunifying children with their parents, it is appropriate for a treatment plan to address those material issues even if the order of adjudication was not necessarily predicated upon the particular problem the treatment plan seeks to address.").

¶ 23 Father next argues that the juvenile court disregarded the lack of an ongoing domestic relationship between he and mother. But this argument disregards the court's consideration that an allocation of parental responsibilities between mother and father was a potential resolution of the case. Such a resolution would have required mother and father to jointly parent the child, even if they were not living together. And, considering mother's and father's history and the caseworker's testimony describing the

coercive dynamic of domestic violence and the resulting negative impact on a co-parenting relationship, it was appropriate for the treatment plan to include the objective.

¶ 24 Father also argues that the juvenile court erred by adopting the domestic violence objective of his treatment plan because he "served time for past domestic violence incidents" and was "rehabilitated." But despite father being ordered to complete domestic violence treatment as part of his probation, the caseworker testified that she had no information that he had taken or successfully completed such treatment. Based on her training, she explained that without treatment domestic violence perpetrators tend to follow their same patterns.

¶ 25 Because the record supports the court's findings that domestic violence treatment for father was appropriate, we discern no error. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29 (explaining that we cannot reweigh the evidence or substitute our judgment for that of the juvenile court).

## IV. Disposition

¶ 26 The judgment is affirmed.

JUDGE FOX and JUDGE HARRIS concur.