25CA0179 Peo in Interest of DHB 08-28-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0179
El Paso County District Court No. 24JV30324
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.H.B. and T.A.B., Children,

and Concerning M.M.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 28, 2025

---

Kenneth R. Hodges, County Attorney, Melanie P. Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem, for D.H.B.

Josi McCauley, Counsel for Youth, Superior, Colorado, for T.A.B.

Just Law Group LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1　　In this dependency and neglect action, M.B. (mother) appeals the judgment entered on a jury's verdict adjudicating D.H.B. (the child) and T.A.B. (the youth) dependent or neglected. Mother also appeals the dispositional order adopting a treatment plan. We affirm.

## I.　　Background

¶ 2　　The El Paso Department of Human Services (the Department) filed a petition in dependency or neglect, raising concerns about mother's substance dependence and mental health and about domestic and family violence perpetrated by mother's boyfriend. Mother requested an adjudicatory jury trial. After a two-day trial, the jury returned special verdicts finding that the ten-year-old child and sixteen-year-old youth were dependent or neglected under sections 19-3-102(1)(a), (b), (c), and (d), C.R.S. 2025. The court then adopted a treatment plan requiring that mother address mental health, alcohol and substance use, domestic and family violence, and protective parenting skills.

## II.　　Evidence at the Adjudicatory Trial

¶ 3　　Mother contends that the juvenile court erred by (1) admitting evidence of her lack of cooperation with the Department and failing

1

to cure the error by giving the jury her proposed instruction; and (2) permitting the youth to testify as a lay witness about her substance abuse. We disagree.

### A.     Standard of Review and Relevant Law

¶ 4       We review evidentiary rulings for an abuse of discretion. *People in Interest of M.V.*, 2018 COA 163, ¶ 52, *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42. A court abuses its discretion when its ruling is based on an erroneous understanding or application of the law or is manifestly arbitrary, unreasonable, or unfair. *Id.* An error is harmless unless "it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Id.* at ¶ 66.

### B.     Mother's Lack of Cooperation with the Department

¶ 5       While a parent may voluntarily work with a department to alleviate any child protection concerns, "a parent need not cooperate with [a] department's efforts to investigate the factual allegations supporting the petition." *People in Interest of G.E.S.*, 2016 COA 183, ¶ 14. A parent's refusal to voluntarily participate in

a department's assessment process may not be used to show that a child is dependent or neglected. *Id.* at ¶ 37.

¶ 6     Mother contends that "the Department essentially invited the jury to make its decision on adjudication based on mother's willingness, pre-adjudication, to cooperate with the Department." In particular, mother argues that the juvenile court erred by allowing the Department to question her about refusing to sign releases of information and by allowing a caseworker to testify both about the releases and about mother's refusal to allow the Department to see her home. But the juvenile court found that this evidence rebutted mother's claim that the Department had not provided her with appropriate services — essentially, it ruled that mother had opened the door to this evidence. *See Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008) ("The concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression."). And Mother does not address this basis for the court's ruling. *See People v. Archer*, 2022 COA 71, ¶ 42 (because appellant did not

challenge the trial court's alternative grounds for admitting evidence, appellate court was "required to conclude" the evidence was properly admitted).

¶ 7     Mother also contends that the juvenile court erred by allowing the Department to question her about whether it had requested that she undergo urinalysis testing (UAs).  But mother denied that the Department had requested UAs, and a caseworker confirmed that the Department never asked mother to do UAs, so we fail to see how this evidence reflected mother's alleged failure to comply.[1]

¶ 8     Moreover, the Department did not argue that mother's refusal to cooperate or participate in services indicated that the children were dependent or neglected.  *Cf. G.E.S.,* ¶ 35 (holding it was error when the department argued to the jury that the child was at risk because of a parent's pre-adjudication refusal to cooperate).  On the

---

[1] Mother also contends that the juvenile court erred by allowing a caseworker to testify that mother had not provided documentation of sobriety, allowed the Department to assess her home, or signed releases to allow the Department to make referrals for mental health and substance abuse services.  But the court sustained mother's counsel's objection to this evidence, and counsel did not request further relief.  *See People v. Alemayehu,* 2021 COA 69, ¶ 101 (declining to review issue when trial court sustained objection and counsel requested no additional relief).

contrary, the caseworkers testified repeatedly that mother did not have to use services provided by the Department or work with the Department in any capacity pre-adjudication. And during mother's testimony, the juvenile court provided the following contemporaneous limiting instruction, to which mother's counsel agreed:

> [A] parent prior to an adjudicatory trial is never required to complete services, engage in services. And so I am going to allow some limited questioning on that only to rebut what the issue has been about the lack of visitation or inappropriate visitation and the delays on the visitation. So you're only to consider it for that limited purpose of further explaining why the Department has or has not expanded mother's parenting time, but you shall not consider it for purposes of determining the question regarding adjudication in this case because [mother] is not required prior to adjudication to complete any services at all.

Absent evidence to the contrary, which we do not have, we presume the jury followed the court's instruction. *People v. Ray*, 2025 CO 42, ¶ 135.

¶ 9    Even so, mother contends that the court also should have given her proposed closing instruction informing the jury that "it was not permitted to draw any negative inferences from or

otherwise rely on Mother's non-engagement" when adjudicating the children.  Mother argues that the court erred by failing to give the instruction "given the amount of improper evidence that was admitted."  But, as discussed, the juvenile court did not admit improper evidence.  And mother does not otherwise explain why declining to give her proposed closing instruction was an abuse of discretion, particularly given the court's contemporaneous limiting instruction.  *See People in Interest of S.X.M.*, 271 P.3d 1124, 1129 (Colo. App. 2011) ("A trial court's decision to give a particular instruction, or to reject a party's tendered instruction, is reviewed for an abuse of discretion.").

¶ 10    Thus, we discern no error in the juvenile court's decisions to (1) allow the evidence at issue and (2) decline the closing instruction mother proposed.

C.    The Youth's Testimony About Mother's Substance Use

¶ 11    To determine whether testimony is lay testimony under CRE 701 or expert testimony under CRE 702, a trial court must look to the basis for the opinion.  *Venalonzo v. People*, 2017 CO 9, ¶ 2.  "If the witness provides testimony that could be expected to be based on an ordinary person's experiences or knowledge, then the witness

is offering lay testimony." *Id.* "If, on the other hand, the witness provides testimony that could not be offered without specialized experiences, knowledge, or training, then the witness is offering expert testimony." *Id.* A lay witness may express an opinion as to whether a person was under the influence of drugs or alcohol as long as a proper foundation has been laid. *People v. Russell*, 2014 COA 21M, ¶ 23, *aff'd*, 2017 CO 3, ¶ 23.

¶ 12    The youth first testified that he was "pretty sure" that mother was using "crystal meth." Mother's counsel objected, and the Department agreed to lay further foundation. Upon further questioning, the youth testified that mother had a "clear pipe with little capsules of crystals" and that she would go into the bathroom with it "and would come out with this rubbery type of smell."

¶ 13    The youth also testified that he had seen mother use alcohol. Mother's counsel objected again. The court overruled the objection, but provided the following limiting instruction:

> [L]et me just make it clear, ladies and gentlemen of the jury, currently [the youth] is not a forensic chemist. He is not an expert. He is testifying about what he believes a substance is. The jury will decide how much weight, if any, to give to that testimony.

¶ 14    The youth went on to describe the cans of alcohol he observed mother drinking from and her behavior when she was drinking from the cans.  The majority of the youth's testimony focused on the frequency and impact of mother's drinking, including her drinking while driving.  And on cross-examination, the child admitted that he had never before shared concerns about mother's use of "crystal meth."

¶ 15    We discern no reversible error by the juvenile court in admitting the youth's testimony.  Mother does not contend, and the record does not suggest, that the youth's opinion about what drug mother was using in his home was based on any specialized training or education.  On the contrary, the youth testified based on his observation of the substance in mother's possession.  And, to the extent that the jury may have been confused, the court's limiting instruction made clear that the youth was not an expert and the jury should not consider his testimony about drugs or alcohol in the home to be expert testimony.

III.    Sufficiency of the Evidence

¶ 16    Mother next contends that, although "[t]here was evidence during the adjudication trial that, prior to the [youth and child's]

8

removal, mother consumed alcohol, may have used other substances, and was in a relationship that was characterized by domestic violence . . . , by the time of the adjudication trial, mother had largely resolved these concerns." We disagree.

### A. Standard of Review and Applicable Law

¶ 17 In determining whether the evidence is sufficient to sustain an adjudication of dependency or neglect, we review the record in the light most favorable to the prevailing party, and we draw every inference "fairly deducible" from the evidence in favor of the jury's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009); *see also People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005). We will not reverse the jury's verdict just because reasonable people might arrive at different conclusions based on the same facts. *S.G.L.*, 214 P.3d at 583.

¶ 18 The purpose of an adjudicatory trial is to determine whether the child is dependent or neglected under section 19-3-102 and whether that status warrants governmental intervention. *People in Interest of N.G.*, 2012 COA 131, ¶ 39; *see also K.D. v. People,* 139 P.3d 695, 699 (Colo. 2006) (noting that the adjudication is not made as to the parents but relates only to the child's status). As

9

relevant here, a child or youth is dependent or neglected when (1) a parent has subjected the child or youth to mistreatment or abuse, or suffered or allowed another to mistreat or abuse the child or youth without taking lawful means to stop the mistreatment or abuse and prevent it from recurring; (2) the child or youth lacks proper parental care through the actions or omissions of the parent; (3) the child or youth's environment is injurious to their welfare; or (4) a parent fails or refuses to provide the child or youth with care necessary for their health, guidance, or well-being. § 19-3-102(1)(a)-(d). Section 19-3-102 requires proof of only one such condition for an adjudication. *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29, *aff'd on other grounds sub nom. People in Interest of R.S. v. G.S.*, 2018 CO 31. Because a dependency and neglect proceeding is preventive as well as remedial, an adjudication may be based not only on current or past harm but also on prospective harm. *S.G.L.*, 214 P.3d at 583.

¶ 19     An adjudication of dependency or neglect must be established by a preponderance of the evidence. *People in Interest of A.E.L.*, 181 P.3d 1186, 1196 (Colo. App. 2008). The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as

10

well as the inferences and conclusions to be drawn therefrom, are matters within the jury's province. *People in Interest of E.S.*, 49 P.3d 1221, 1226 (Colo. App. 2002); *see K.D.*, 139 P.3d at 702.

## B. Analysis

¶ 20 Mother insists that the evidence was insufficient to support an adjudication because "the two major justifications for the Department's involvement — mother's alleged substance use and domestically violent relationship — were no longer ongoing child protection concerns by the time of the adjudication trial." This is because, mother contends, she stopped drinking and ended the domestically violent relationship.

¶ 21 At the trial, mother testified that she "absolutely recognize[d]" that she had a problem with drinking alcohol. She testified that her last drink was the week before the adjudicatory trial and that she didn't bring open containers of alcohol with her when she drove "anymore." But she also testified that she was drinking and using substances more in the last three months, and that substance abuse had "been a problem for many years." The youth, the child, and mother's adult daughter all testified extensively about mother's long-term alcohol use and its impact on her ability to care for the

11

child and the youth. Given this record, the jury could have fairly deduced that one week of sobriety was not sufficient to resolve the concerns related to mother's drinking and substance dependence.

¶ 22 Mother also told the jury that she "was in an abusive relationship, and that was not okay." Mother testified that her former boyfriend hit her and that she "believe[d] something happened" between the boyfriend and the child but did not "see this as child abuse." Mother testified that she broke up with the boyfriend a few months before the adjudicatory trial and was not intending to resume the relationship. But the caseworker, an expert in child protection and child welfare, opined that mother did not appear able to recognize the signs of an abusive relationship, a necessary skill to keep her, the youth, and the child out of similar situations in the future.

¶ 23 Mother also testified that, at the time of the adjudicatory trial, she had "a lot of people over" at her home, though she knew this was in violation of her lease. She testified that she did not know the last name of one of these individuals and that she had "nothing to do with" a person who was seen drinking alcohol at her home while the youth was there. Mother refused to answer other

questions about the people staying in the home. The youth, who met some of these individuals, testified that he did not know them and would not feel safe returning to mother's home. The caseworker testified that she was concerned that mother may not know who was in her home and that mother was not acting as a protective parent because these individuals could cause her to lose her housing. The caseworker testified that, with these other adults living in the home, "it sounds like [the youth and the child] have no place to return home to."

¶ 24 The jury also heard from the child, who testified that mother was "not acting normal" at the family time held the week before the adjudicatory trial. The child testified that he did not feel safe at the family time session and would not feel safe returning to mother's home based on her demeanor during family time. While the child agreed that mother was "doing a little bit better," he did not feel that she was better to the point where he would be comfortable returning to her care.

¶ 25 From the above-described evidence, the jury could reasonably infer that the youth and the child were each dependent or neglected under one or more of the statutory criteria presented. *See*

§ 19-3-102(1)(a)-(d). Accordingly, we will not disturb the jury's verdict.

## IV. Dispositional Orders

¶ 26    Finally, Mother contends that the juvenile court erred by "ordering a boilerplate, highly intrusive treatment plan." We discern no error.

### A. Standard of Review and Applicable Law

¶ 27    "The trial court has discretion to formulate a treatment plan reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." *People in Interest of C.L.S.*, 934 P.2d 851, 855 (Colo. App. 1996); *see also* § 19-1-103(12), C.R.S. 2025 (defining an "appropriate treatment plan"). Again, a court abuses its discretion when its ruling is based on an erroneous understanding or application of the law or is manifestly arbitrary, unreasonable, or unfair. *M.V.*, ¶ 52.

¶ 28    Upon an adjudication of a child as dependent or neglected, the juvenile court must fashion a treatment plan designed to "preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family."

*People in Interest of K.B.*, 2016 COA 21, ¶ 11.  "In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns identified during the assessment of the family."  *Id.* at ¶ 14.  Because the purpose of a treatment plan is to address the material issues that are barriers to reunifying children with their parents, it is appropriate for a treatment plan to address those issues even if the adjudication was not necessarily predicated upon them.  *C.L.S.*, 934 P.2d at 856.

## B.  Analysis

¶ 29   Mother contends that the treatment plan was inappropriate because it "required mother to interact regularly with the department and its contracted providers" despite mother's "deep distrust" of the Department.  At the dispositional hearing, the juvenile court acknowledged mother's objection to the Department being involved with her family.  Nonetheless, the court found that mother's cooperation with the department was "a necessary part of a successful treatment plan" and "in the children's best interest."  Even so, the court ordered that mother could locate her own providers to meet the requirements of the treatment plan and did

15

not need to go through the Department or use providers the Department chose. The court also ordered that, if mother wanted to work with a mental health provider who could not provide a psychological evaluation, the court would likely amend the treatment plan to conform to mother's chosen provider. We discern no abuse of the court's discretion in these orders.

¶ 30     Mother also contends that the child protection concerns that led to the Department's involvement "had been entirely or nearly resolved by the time of the adjudication trial," rendering the treatment plan unnecessary. But the record belies these assertions, as more fully addressed above. The juvenile court found that the youth, the child, and mother's adult daughter all provided credible testimony detailing their concerns with mother's mental health, alcohol consumption, relationships involving domestic violence, and lack of protective parenting. To address these ongoing child protection concerns, the court adopted a treatment plan requiring mother to complete assessments for substance dependence, mental health, domestic violence, and family violence. Because the record supports the need to address these child protection concerns, we discern no abuse of the court's discretion in

ordering mother to complete assessments to determine what, if any, treatment might be necessary to remedy them. *See K.B.*, ¶ 11.[2]

¶ 31 Mother also claims that the court adopted a "boilerplate, highly intrusive treatment plan that was neither tailored to the family's specific needs nor reasonably calculated to lead to a successful family reunification." But mother does not develop this claim beyond her bald assertion. We therefore decline to address it further. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (where an appellant does not identify supporting facts, make specific arguments, or set forth specific authorities to support a contention, the contention will not be addressed); *see also Cikraji v. Snowberger*, 2015 COA 66, ¶ 10 (an appellate court is not required to "comb the record" for facts supporting a party's argument that are not cited in the briefs).

---

[2] At the dispositional hearing, mother did not object to the remaining treatment plan objectives requiring her to establish and maintain self-sufficiency, participate in family time, and attend life skills and a nurturing parenting program. Mother does not specifically challenge these components of the plan on appeal either. As a result, we do not address them.

## V. Disposition

¶ 32    We affirm the judgment adjudicating the child and the youth dependent or neglected and the dispositional order adopting the treatment plan for mother.

JUDGE DUNN and JUDGE SCHOCK concur.