25CA0443 Peo in Interest of DS 10-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0443
Rio Blanco County District Court No. 24JV3
Honorable Elise Myer, Judge

The People of the State of Colorado,

Appellee,

In the Interest of D.S. and T.B., Children,

and Concerning C.T.,

Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

Steerman Law Offices, PLLC, Donald Steerman, Lance P. Clark, Meeker, Colorado, for Appellee

Cassie L. Coleman, Guardian Ad Litem

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this dependency or neglect proceeding, C.T. (mother) appeals the judgment adjudicating D.S. and T.B. (the children) dependent and neglected and the order adopting a treatment plan. We affirm.

## I.    Background

¶ 2    After receiving a referral raising concerns about mother's substance use, the children's school attendance, and abuse by M.L. (stepfather), the Rio Blanco County Department of Human Services (the Department) opened a voluntary case to offer support and services to mother.  But three months later, the Department closed the case because of mother's lack of communication and cooperation.

¶ 3    A few months later, the Department received another referral after the children had been found riding their bicycles, unsupervised, nearly three and a half miles from their home.  The children told the responding officer that stepfather was physically abusive and that they were running away from home.  After receiving the referral, the caseworker met with mother.  During this meeting mother commented that "she understands how some people kill their children," which made the caseworker concerned

for the children's safety.  The Department then sought, and the court granted, temporary custody of the children to the Department for placement in foster care.  The Department then filed a petition in dependency or neglect.

¶ 4     Mother denied the allegations and requested an adjudicatory jury trial.  At the pretrial readiness conference, mother's counsel requested a continuance to have additional time to prepare for the hearing.  After hearing oral arguments from all parties, the juvenile court denied the request and the jury trial proceeded as scheduled one week later.  After the hearing, the court adjudicated the children dependent and neglected and set a dispositional hearing.

¶ 5     At the dispositional hearing, nearly three weeks later, mother requested a continuance because she did not have time to review the proposed treatment plan with her attorney.  The juvenile court denied mother's request and adopted the proposed treatment plan.  Among other things, the treatment plan required mother to "achieve and maintain sobriety from all mind altering and illegal substances."

## II. Mother's Requested Continuances

¶ 6 Mother contends that the juvenile court erred by denying her requests to continue the adjudicatory and dispositional hearings. We disagree.

### A. Applicable Law and Standard of Review

¶ 7 In general, parents have a constitutionally protected liberty interest in the care, custody, and management of their children. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 17. Thus, due process requires the state to provide fundamentally fair procedures in dependency and neglect proceedings. *People in Interest of J.R.M.*, 2023 COA 81, ¶ 7. At a minimum, a parent must be given adequate notice of the proceedings and an opportunity to protect their rights. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007). "[I]n assessing fairness, 'the trial court [must] give primary consideration to the child's physical, mental, and emotional needs.'" *People in Interest of L.S.*, 2023 CO 3M, ¶ 30 (quoting *A.M.*, ¶ 20). A parent must establish "actual prejudice resulting from the juvenile court's denial of [a] requested continuance" to succeed on a due process claim. *People in Interest of E.B.*, 2022 CO 55, ¶ 22.

¶ 8    The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2025. Thus, when ruling on a motion to continue, the juvenile court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency." *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.

¶ 9    We review a juvenile court's denial of a motion to continue for an abuse of discretion. *Id.* at ¶ 13. A court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law." *E.B.*, ¶ 14. We review the underlying procedural due process claims de novo. *R.J.B.*, ¶ 26.

B.    Mother's Request to Continue the Adjudicatory Hearing

¶ 10    The juvenile court concluded that it could not find good cause to continue the adjudicatory hearing. In so ruling, the court's main focus was on the children's best interests, but it also considered the procedural posture and history of the case, the court's schedule, and mother's due process rights.

4

¶ 11 The court concluded that it was in the children's best interests to keep the case moving forward because the children had been struggling for "quite some time" and their struggles had become "more and more exacerbated with time." The record supports these findings. The children's guardian ad litem (GAL) advised that the children were "doing really not well" and had made comments that "no on[e] want[ed] them" due, at least in part, to the fact that mother had not visited them since the case began. The GAL expressed that moving toward permanency was important to help the children move ahead therapeutically.

¶ 12 On appeal, mother concedes that "[t]he court denied the request for a continuance because the [children] were not doing well." But, she still asserts that the juvenile court erred by focusing on the court's calendar instead of mother's need for effective representation. We are unpersuaded. The juvenile court did mention that it was denying the request for a continuance partly because it could not reset the adjudicatory hearing for approximately three or four months. But, based on our review of the court's entire ruling, rescheduling the hearing was not the court's sole consideration — it was just one factor that the court

considered when deciding what would be in the children's best interests.

¶ 13　Mother also asserts that the juvenile court violated her right to effective assistance of counsel because her continuance request was premised on her counsel's need for additional time to prepare. But, as we read the record, any lack of preparedness was a result of mother's own actions "for which the court need not grant a continuance." *People v. Faussett*, 2016 COA 94M, ¶ 16. Mother's counsel expressed that she did not feel prepared for the hearing because, despite several attempts, she was unable to communicate with mother. *See Johnson v. People*, 470 P.2d 37, 42 (Colo. 1970) (finding the trial court did not abuse its discretion when defendant refused to cooperate with his counsel and left no "real justification" for the continuance); *People in Interest of J.T.*, 13 P.3d 321, 322 (Colo. App. 2000) (finding no abuse of discretion in the trial court's denial of a continuance on the eve of trial where "[the defendant] was responsible for not making himself available to his attorney"), *overruled on other grounds by People in Interest of T.B.*, 2021 CO 59, ¶ 58 n.20.

¶ 14    Finally, to the extent mother argues that her due process rights were violated, we disagree.  Generally, "due process requires the state to provide fundamentally fair procedures to a parent facing termination," which include (1) notice of the hearing, (2) advice of counsel, and (3) the opportunity to be heard and defend. *R.J.B.*, ¶ 27.  Here, the record shows that mother had notice of the adjudicatory hearing, was represented by counsel, and counsel was able to present and question witnesses during the hearing.  Mother fails to indicate what other evidence would have been presented had the hearing been continued, so "we are unable to discern that the [hearing was] affected in any appreciable way" when the court denied mother's request for a continuance.  *People in Interest of C.G.*, 885 P.2d 355, 358 (Colo. App. 1994).  Because mother has failed to show actual prejudice that resulted from the court denying her request, her due process claim fails.  *E.B.*, ¶ 22.

¶ 15    We therefore conclude that the juvenile court properly balanced the need for orderly and expeditious administration of justice against the facts underlying the motion, mother's due

process rights, and the children's best interests, which included their need for permanency.[1]  *See R.J.B.,* ¶ 11.

### C.    Mother's Request to Continue the Dispositional Hearing

¶ 16    The juvenile court denied mother's request to continue the dispositional hearing, expressing little confidence that, even with a continuance, mother would engage in the proceedings in a "meaningful way."  The court also expressed its concern that mother was attempting to delay the proceedings.  Ultimately, the court found that the children had struggled significantly and that it needed to enter a treatment plan.  This finding is supported by the record.

¶ 17    Mother did not (1) appear timely for the pretrial readiness conference; (2) attend either day of the two-day adjudicatory

---

[1] We agree with mother that the juvenile court improperly cited Chief Justice Directive 96-08, Adjudication and Disposition Hearings, Expediting the Timing of, Dependency and Neglect, pp 1-3 (repealed Sept. 2023), in support of its ruling.  However, because the court properly balanced the need for orderly administration of justice with the children's need for permanency, *see People in Interest of R.J.B.,* 2021 COA 4, ¶ 11, any reliance on the Chief Justice Directive was harmless.  *See also Bly v. Story,* 241 P.3d 529, 535 (Colo. 2010) (holding that an error that did not substantially influence the outcome of the case or impair the basic fairness of the trial itself is harmless).

hearing; or (3) respond to the Department's attempts to discuss the treatment plan prior to the dispositional hearing. The GAL noted that the children had not seen mother in approximately six months. The Department's counsel also argued that the case was "running out of time" because, in order to have a successful reunification between mother and the children, it was imperative that mother quickly begin working on a treatment plan.

¶ 18 Mother acknowledges that the juvenile court discussed the proposed treatment plan objectives and action steps and gave her an opportunity to object before entering its order. But she asserts that, because of her brain injury, voicing immediate objections was "likely difficult" for her. However, mother never (1) notified the juvenile court of her brain injury, or any potential impact it may have on the proceedings; (2) requested accommodations from the court; or (3) mentioned concerns about her injury's impact on her ability to object to the treatment plan during the dispositional hearing. Further, mother's own explanation of her brain injury to the Department focused on its impact on her "[e]motional [d]ysregulation," not her cognitive understanding or need for additional time to process information. Based on the record, we

conclude that the juvenile court did not err by asking mother to make any objections to the proposed treatment plan during the scheduled dispositional hearing.

¶ 19    Next, mother contends that the juvenile court erred by denying her request for a continuance because it deprived her of the opportunity to meaningfully review the treatment plan with counsel. In support, mother relies on the court's acknowledgment that she had not reviewed the treatment plan in a "meaningful way." Our review of the record, however, reflects that the Department attempted to communicate with mother to craft the treatment plan, but she did not respond. Moreover, mother received a copy of the proposed treatment plan prior to the dispositional hearing but did not attempt to discuss it with her counsel before the hearing.

¶ 20    To the extent mother argues that the juvenile court violated her right to due process by depriving her of effective assistance of counsel, we are not persuaded. We agree that, in general, parents have a right to counsel at a dispositional hearing. *See* § 19-3-202(1), C.R.S. 2025. And, as discussed above, mother had appointed counsel but failed to avail herself of her counsel's assistance. Additionally, dispositional orders, including the

adoption of treatment plans, are interlocutory and can be changed after periodic review by the court or by motion of a party. *See People in Interest of H.T.*, 2019 COA 72, ¶ 24. Thus, even if the court had, as mother argues, adopted an improper treatment plan, mother's counsel could have moved to modify her treatment plan. Finally, mother has failed to show actual prejudice resulting from the juvenile court's denial of her requested continuance. *See E.B.*, ¶ 22. Thus, her due process claim fails.

### III.  Treatment Plan

¶ 21     Mother next contends that the juvenile court erred by adopting the substance abuse objective of her treatment plan. We disagree.

#### A.    Applicable Law and Standard of Review

¶ 22     An appropriate treatment plan is one "approved by the court [and] reasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and [is] relate[d] to the child's needs." § 19-1-103(12), C.R.S. 2025. A treatment plan's appropriateness is measured by the likelihood of success in reuniting the family, which must be assessed in light of the facts existing at the time it is approved and the safety concerns identified during the assessment of the family. *People in Interest of*

*K.B.*, 2016 COA 21, ¶ 14; *People in Interest of D.C-M.S.*, 111 P.3d 559, 561 (Colo. App. 2005). Because the purpose of a treatment plan is to address the barriers to reunifying families, it may include issues that were not the basis for the adjudication judgment. *People in Interest of M.W.*, 2022 COA 72, ¶ 43. Generally, a court may require treatment "when it is warranted by the record before the court." *People in Interest of L.M.*, 2018 COA 57M, ¶ 51.

¶ 23 The juvenile court has discretion to formulate an appropriate treatment plan for a parent. *People in Interest of C.L.S.*, 934 P.2d 851, 855 (Colo. App. 1996).

## B. Analysis

¶ 24 After hearing the evidence at the dispositional hearing, the juvenile court adopted the substance abuse objective, which required, among other things, that mother complete a substance abuse evaluation with a provider of her choice and follow all recommendations stemming from the evaluation. The court found that the treatment plan, including the substance abuse objective, was (1) appropriate; (2) reasonably calculated to render mother fit within a reasonable time; and (3) in the children's best interests. In so finding, the court acknowledged mother's objection to the

substance abuse component but found that evidence about drug testing was presented during the adjudicatory hearing, that the children had struggled significantly, and the court needed to understand if substance abuse was an issue for mother.

¶ 25    These findings are supported by the record.  During the adjudicatory hearing, the caseworker testified that the voluntary case opened less than a year before the adjudicatory hearing involved allegations of mother's substance abuse.  At that time, the Department requested that mother take a drug test, but she refused until the Department received a court order for her compliance.  Even then, it took mother about two weeks to comply with the order for drug testing.  Considering this, the Department could not determine whether the allegations about mother's substance abuse were unfounded.  And, during the dispositional hearing, counsel for the Department reiterated that it had concerns regarding mother's sobriety.

¶ 26    Mother asserts that because substance abuse was "not alleged as the reason for governmental intrusion into the family's lives," it was beyond the scope of the dependency case and, thus, the juvenile court erred by adopting that treatment plan objective.  But

the court found that the Department raised concerns about mother's sobriety and, in order for the children to be returned safely home, any substance abuse issues needed to be resolved.

¶ 27　Even though substance abuse was not the focus of the petition in dependency or neglect, the purpose of a treatment plan is to address "the material issues that are barriers to reunifying children with their parents." *M.W.*, ¶ 43; *see also C.L.S.*, 934 P.2d at 856 ("[T]he specific ground on which the jury [finds] the child to be dependent and neglected [does] not restrict the juvenile court's discretion to formulate a treatment plan in the best interests of the child.").

¶ 28　Because the record supports the court's findings that a substance abuse objective for mother was appropriate, we discern no error. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29 (explaining that we cannot reweigh the evidence or substitute our judgment for that of the juvenile court).

### IV.　Americans with Disabilities Act (ADA)

¶ 29　Mother contends that the juvenile court erred by adopting a treatment plan that did not require the Department to provide

accommodations for her disability in violation of the ADA, 42 U.S.C. §§ 12131-12134.  We disagree.

### A.  Applicable Law

¶ 30     The ADA requires a public entity — like the Department — to make reasonable accommodations for qualified individuals with disabilities.  *See People in Interest of C.Z.*, 2015 COA 87, ¶ 11; *see also* 42 U.S.C. § 12102 (defining "disability" under the ADA); 42 U.S.C. § 12111(8) (defining "qualified individual" under the ADA).

¶ 31     Whether a parent is a qualified individual with a disability under the ADA is a case-by-case determination.  *See Colo. State Bd. Of Dental Exam'rs v. Major*, 996 P.2d 246, 249 (Colo. App. 1999).  Before a department can be required to provide reasonable accommodations under the ADA, it must know that the individual has a qualifying disability — either because the disability is obvious or because someone has informed the department of the disability.  *People in Interest of S.K.*, 2019 COA 36, ¶ 22.  Thus, while a department must provide appropriate screening and assessments of a parent, the parent is responsible for disclosing information regarding his or her disability.  *Id.* at ¶ 21.  And a parent should

15

also identify any modifications that he or she believes are necessary to accommodate the disability. *Id.*

## B.    Preservation

¶ 32    The Department and GAL contend that mother did not adequately preserve her ADA challenge and, therefore, we should not consider it. We need not decide this issue because, even if we assume mother preserved her claim, we discern no reversible error. *See L&R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where the outcome would not change).

## C.    Analysis

¶ 33    Even assuming that mother was a qualified person with a disability under the ADA, she did not identify any necessary accommodations. *See S.K.*, ¶ 21 ("[T]he parent is responsible for disclosing to the Department and the juvenile court information regarding his or her mental impairment . . . . And the parent should also identify any modifications that he or she believes are necessary to accommodate the disability."). The only time mother raised the need for accommodations was in response to the Department's request that she sign the standard family time

16

visitation agreement/expectation form. When the Department asked what accommodations she needed, mother responded "that the Department [did] not have the means or funds to accommodate her disability." At no point during the case, including during the contested dispositional hearing, did mother request specific accommodations for her disability. Despite this, the juvenile court's dispositional order required "the Department to provide any accommodations necessary for [mother] — that they can reasonably provide — to enable visitation." Given this record, we reject mother's assertion that the juvenile court erred by not making, or requiring the Department to make, reasonable accommodations for her disability as part of her treatment plan.

## V. Disposition

¶ 34      The judgment is affirmed.

JUDGE FOX and JUDGE HAWTHORNE concur.